Sally STONE, Plaintiff-Respondent,†

v.

Dr. Phillip A. SEEBER, M.D., Defendant,

PODIATRY ASSURANCE COMPANY, LTD.,
Defendant-Appellant,

BELOIT MEMORIAL HOSPITAL, Wisconsin Health
Care Liability Insurance Plan (WHCLIP), State of
Wisconsin Patients Compensation Fund, Defendants.

Court of Appeals

*Nos. 89-0944, 89-1251. Submitted on briefs November 10,
1989.—Decided March 1, 1990.*

(Also reported in 455 N.W.2d 627.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Meier, Wickhem, Southworth & Lyons, S.C.,* by *Theodore V. Lyons, Jr.,* of Janesville.

For the plaintiff-respondent the cause was submitted on the briefs of *Schrank & Schultz,* by *Raymond E. Schrank, III* and *Peter E. Hans,* of Madison.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

GARTZKE, P.J.  Podiatry Assurance Company, Ltd., (PACO) appeals from three judgments, the com-

276

bined effect of which awards $202,443.20 to Sally Stone. PACO issued a podiatry malpractice liability insurance policy to Phillip Seeber who allegedly negligently injured Stone. PACO is incorporated under the laws of the Cayman Islands in the British West Indies. The trial court granted summary judgment to Stone rather than to PACO on the question whether its policy covers Stone's claim against Seeber.

The dispositive issues are whether PACO converted the policy from an "occurrence" to a "claims-made" basis pursuant to the terms of the policy and whether the termination provisions in sec. 655.24, Stats. 1983, apply to a policy never submitted by a nondomestic insurer for approval by the commissioner of insurance.[1] The parties agree that the trial court erred by entering a conditional judgment against PACO in the amount of $200,000 without a hearing or PACO's consent. We concur and reverse that judgment, the first of three. We conclude PACO complied with its policy and sec. 655.24 does not apply. We therefore reverse the second judgment declaring that coverage exists. We reverse the third judgment for $2,443.20 in costs and remand for entry of judgment dismissing Stone's complaint against PACO.

PACO's answer to Stone's complaint denies that its policy covered Seeber as to Stone's claim. PACO moved for summary judgment dismissing the complaint against it on that basis. Stone also moved for summary judgment, urging that the trial court "find coverage under the policy." The court granted Stone's motion and denied PACO's. It entered three judgments against PACO and PACO appealed.

---

[1]Section 655.24(2)(b), Stats. 1983, provides in substance that a termination is not effective unless a written notice has been received by the commissioner and the insured at least 10 days before the effective date.

Section 802.08, Stats., governs summary judgment. The methodology mandated by that statute has been described in many cases, including *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980). We need not repeat it. Our review is *de novo* and independent of the trial court's resolution. *Id.*

The amended complaint alleges that Seeber negligently injured Stone in 1983 and 1984 and that PACO insured Seeber at that time. The complaint states a cause of action against PACO. PACO's answer alleges that Seeber breached the terms of his policy with them and thereby lost coverage for the period in question as to Stone's claim. The answer states a defense.

Cross motions for summary judgment sometimes imply a stipulation as to the facts of the case, as in *Powalka v. State Mut. Life Assurance Co.,* 53 Wis. 2d 513, 518, 192 N.W.2d 852, 854 (1972), but not always. A "movant may be correct in stating that the facts relevant to his theory of the case are not in dispute, yet contest the relevant issues of fact under his opponent's theory." *Hiram Walker & Sons, Inc. v. Kirk Line,* 877 F.2d 1508, 1513 n.4 (11th Cir. 1989). Additionally, both parties might erroneously conclude from the existence of cross motions that no factual dispute exists, when in fact, one does. We therefore follow the standard summary judgment methodology, and because the only disputes on appeal concern PACO's defense to liability, we turn first to PACO's motion for summary judgment.

PACO's supporting affidavits assert the following:

Seeber and other Illinois podiatrists organized PACO in the Cayman Islands. PACO is not licensed to do business in any state. PACO sells podiatric malpractice insurance to podiatrists licensed in Illinois. It does not solicit insurance business in Wisconsin. It makes

insurance available only on a direct placement basis. PACO issued malpractice insurance policies to Seeber in 1983, 1984, and 1985. It was aware that Seeber practiced podiatry in Wisconsin when it issued the policies.

In each of the three years, PACO issued a certificate of coverage to Seeber. The last certificate expired on February 1, 1986. Each certificate simply certified "that the company has issued a podiatry professional liability policy" with $200,000/$600,000 limits to Seeber for a specified period.

The policy provided that an additional premium, referred to as a "surcharge," would be charged if a claim was filed against him. It further provided:

> A surcharge is an additional premium which must be paid in full irrespective of whether an insured renews or does not renew a policy. In the event that a surcharge *or any part thereof* remains unpaid ninety days after it has been billed, the company may
>
> . . ..
>
> (B) . . . deny liability on any claim against the insured irrespective of the policy year in which the incident occurred filed after the ninety day period since the billing of the surcharge has expired. [Emphasis added.]

On December 24, 1985, PACO wrote to Seeber stating that he owed $3,450 in surcharges because claims had been made against him. The letter also discussed renewal for the policy year beginning February 1, 1986.

On February 6, 1986, Seeber's father requested redemption of the stock certificates PACO had issued to him and his son. On May 5, 1986, PACO advised Seeber that he owed surcharges totaling $9,487.50, less a credit of $1,402 for stock redemption proceeds. PACO asked Seeber immediately to pay the difference of $8,085.50

and stated that if PACO did not receive that amount by May 16, 1986, PACO would accept the defense of no more cases against him. On the same day, PACO asked Seeber's father if he wanted the proceeds from redemption of his stock to be applied against his son's surcharges. The father replied on May 13, 1986 that such was his wish.

On May 6, 1986, PACO again wrote to Seeber, noting non-renewal. It itemized surcharges totaling $9,487.50, demanded immediate payment without referring to the $1,402 credit, and stated that PACO would not defend more cases against Seeber unless it received his check by June 5.

PACO wrote to Seeber on August 6, 1986 again setting out the surcharges. The letter showed credits for the proceeds from the redemption of Seeber's stock and his father's. The credit from Seeber's shares was $1,402 and that from his father's was $1,301. The letter stated that PACO would not accept the defense of any claims against Seeber until the balance was paid.

On August 29, 1986, Stone commenced this action based on alleged malpractice in 1983 and 1984. Seeber sent the pleadings to PACO. On November 11, 1986, PACO informed Seeber that due to his failure to pay the surcharges, his coverage had been converted so as to exclude coverage for claims made against him after August 4, 1986, and that PACO would deny coverage on any claim filed after that date.

The affidavits supporting PACO's motion establish a *prima facie* defense that the policy was converted to a claims-made basis because Seeber failed to pay surcharges. The affidavits show that PACO billed Seeber for some $9,000 in surcharges on May 5, 1986 and informed him that $1,400 of that amount was covered by redemption of his stock. His father's stock was redeemed

for about the same amount. Seeber must have known that he had to pay some $6,000 in surcharges within ninety days, and he did not do so.

We reject Stone's argument that Seeber was not "billed" until August 6, 1986, when PACO first provided him with the correct surcharge balance. Seeber knew or should have known when he received the letter dated May 5, 1986 that he owed approximately $6,000 in surcharges once all stock redemption proceeds were applied. He should have taken steps to pay that amount.

PACO having established a *prima facie* defense, the burden shifts to Stone to submit affidavits setting forth evidentiary facts creating a material issue of fact as to an element of the defense. *Grams,* 97 Wis. 2d at 338, 294 N.W.2d at 477.

Stone's affidavits do not contradict PACO's affidavits or set forth new facts creating an issue of material fact. She does, however, assert that the conversion was ineffective because it conflicts with Wisconsin statutes and public policy.

Stone first asserts that the conversion was ineffective because PACO did not comply with the termination provisions in sec. 655.24, Stats. 1983, which provides in relevant part:

> (1) No insurer may enter into or issue any policy of health care liability insurance until its policy form has been submitted to and approved by the commissioner [of insurance]. The filing of a policy form by any insurer with the commissioner for approval shall constitute, on the part of the insurer, a conclusive and unqualified acceptance of all provisions of this chapter, and an agreement by it to be bound hereby as to any policy issued by it to any health care provider.

(2)   Every policy issued under this chapter shall be deemed conclusively to provide the following:

. . ..

(b)   That any termination of the policy by cancellation or nonrenewal is not effective as to patients claiming against those covered by the policy unless a written notice giving the date upon which the termination is to become effective has been received by the commissioner and the insured at least 10 days prior to the taking effect of a cancellation or nonrenewal for nonpayment of premium . . ..[2]

PACO counters that it is an "alien insurer," sec. 600.03(2), Stats., because it is domiciled outside the United States. It therefore is a "nondomestic insurer." Sec. 600.03(32). It argues that Seeber directly procured insurance from it within the meaning of sec. 618.42(1), Stats., which reads:

Subject to the restrictions of this section, any person seeking insurance may obtain it if no agent or broker resident or doing business in this state is involved and if negotiations occur primarily outside this state. Negotiations by mail occur within this state if a letter is sent from or to an address in this state.

Section 600.01(1)(b) reads in relevant part: "Unless otherwise expressly provided, chs. 600 to 646 do not apply to: . . . 6. Transactions directly procured through negotiations under s. 618.42." PACO concludes on the basis

___

[2]Section 655.24(2)(b), Stats. 1983, was amended by sec. 53, 1985 Wis. Act 340. The amendment to sec. 655.24(2)(b) applies to notices of cancellation received on or after January 1, 1987. Secs. 75(10) and 76(1), 1985 Wis. Act 340. Therefore, sec. 655.24(2)(b), Stats. 1983, applies to the notices in this case, all of which were issued before 1987.

of sec. 600.01(1)(b) that Wisconsin's insurance statutes do not apply to it.

Stone responds by correctly noting that regardless whether sec. 600.01(1)(b), Stats., exempts the policy from the requirements of chs. 600 to 646, Stats., it does not exempt the policy from the requirements of ch. 655, Stats., and she relies on sec. 655.24(1) and (2).

Nothing in Stone's affidavits states or suggests that PACO filed its policy form with the commissioner for approval as required by sec. 655.24(1), Stats. The issue is therefore whether a nondomestic insurer accepts the provisions of ch. 655, Stats., by knowingly issuing a policy to a health care provider who practices in Wisconsin, even if the insurer has not filed its policy for approval by the commissioner.

■

Wisconsin could perhaps impose such an acceptance as a condition to doing business in this state. *Cf. New York Life Ins. Co. v. State,* 192 Wis. 404, 407, 211 N.W. 288, 289 (1927), *writ of error dismissed,* 276 U.S. 602 (1928) ("Wisconsin has the right to determine the conditions under which it will permit foreign insurance companies to do business in this state"). However, the legislature did not attempt to impose acceptance of ch. 655, Stats., upon nondomestic insurers who fail to file a policy form with the commissioner for approval. On the contrary, sec. 655.24(1) provides only that the *filing* of a policy form with the commissioner for approval constitutes acceptance of ch. 655's terms. Because Stone has made no showing that PACO filed its policy with the commissioner for approval, PACO's policy provisions concerning conversion to a claims-made basis are not restricted by the termination provision in sec. 655.24(2)(b).

Stone next asserts that PACO's conversion of See-ber's policy to a claims-made basis is against public policy for various reasons. She cites Wisconsin insurance statutes not applicable to the facts before us but which she claims evince a public policy. We have already determined that Wisconsin insurance statutes do not apply to the PACO policy. The legislature could have chosen otherwise and did not. For us to apply to PACO's insurance policy the public policies behind statutes inapplicable to PACO's policy would usurp legislative prerogatives.

Stone relies on *Handal v. American Farmers Mut. Cas. Co.*, 79 Wis. 2d 67, 255 N.W.2d 903 (1977), and *Patrick v. Head of Lakes Cooperative Elec. Ass'n*, 98 Wis. 2d 66, 295 N.W.2d 205 (Ct. App. 1980), for the proposition that public policy requires honoring an insured's reasonable expectations of coverage. The cited cases are not in point. They apply a rule of construction based on a public policy favoring enforcement of an insured's reasonable expectations to construe an ambiguous insurance contract. *Handal* at 77, 79, 255 N.W.2d at 907–08; *Patrick* at 69, 71, 295 N.W.2d at 207–08. We are not called upon to construe PACO's insurance contract.

We conclude that Stone's affidavits have failed to rebut PACO's *prima facie* defense to Stone's action and have failed to show that she is entitled to judgment. The trial court erred by granting summary judgment to Stone and against PACO. It should have granted PACO's motion and entered judgment dismissing Stone's complaint.

*By the Court.*—Judgments reversed and cause remanded with directions to enter judgment dismissing the complaint against PACO.