Stephanie GROTELUESCHEN, by her Guardian ad Litem, Joseph G. Doherty, Keith T. Grotelueschen and Roxanne Grotelueschen, Plaintiffs-Respondents-Petitioners,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Appellant,†

Ronald E. DIMMER, Saukville Plumbing, Inc. and General Casualty Company of Wisconsin, Defendants,

CERA-MITE CORPORATION, Defendant-Respondent-Petitioner.

Supreme Court

*No. 90-2571. Oral argument September 1, 1992.—Decided November 19, 1992.*

(Also reported in 492 N.W.2d 131.)

†Motion for reconsideration denied.

For the plaintiffs-respondents-petitioners there were briefs by *Joseph G. Doherty, Patrick R. Griffin* and *Bunk, Doherty & Griffin, S.C.*, West Bend and oral argument by *Joseph G. Doherty.*

For the defendant-respondent-petitioner there was a brief by *Gregg E. Bridge* and *Petrie & Stocking, S.C.*, Milwaukee.

For the defendant-appellant there was a brief by *M. Christine Cowles, Terence B. Kelly* and *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee and oral argument by *Ms. Cowles.*

LOUIS J. CECI, J. This case is before the court on petitions for review brought by both the plaintiff, Stephanie Grotelueschen (Stephanie), and by Cera-Mite Corporation, her health benefits payor, of a published decision of the court of appeals, *Grotelueschen v. American Family Insr.*, 163 Wis. 2d 666, 472 N.W.2d 544 (Ct. App. 1991). A majority of the court of appeals, Judge Richard S. Brown, dissenting, reversed the order granting summary judgment in favor of Stephanie entered by

441

the circuit court for Washington County, Richard T. Becker, Circuit Judge. The circuit court had granted Stephanie's motion for summary judgment, deciding that the insurance policy issued by American Family Mutual Insurance Company (American Family) to Ronald and Louise Dimmer as a partnership covered Ronald Dimmer's liability for damages to Stephanie, his granddaughter, while he was operating a lawn tractor. The circuit court had at that time denied the motion for summary judgment brought by American Family.

Stephanie and Cera-Mite contend that American Family's policy covers Dimmer's liability under two alternate theories: (1) the policy, which describes the insured as Dimmer and his wife and then designates the insured as a partnership, covers Dimmer's liability regardless of whether that liability relates to the partnership; and (2) Dimmer acted in the ordinary course of partnership business at the time of the accident. We agree with both arguments and therefore reverse the decision of the court of appeals.

The relevant facts are undisputed. Ronald and Louise Dimmer are partners in D&R Rentals, a partnership that owns and operates an eight-unit apartment building. In 1982, American Family issued a "businessowners [sic] package policy." The declarations page of the policy identifies "Named Insured-Address" as:

> Dimmer, Ronald E & Louise J Dimmer
> 111 S Main St
> Saukville WI 53080

and then goes on to identify the named insured as a partnership. Section I of the policy provides basic coverage for the eight-unit apartment building located at 417 Dries Street in Saukville. Section II provides comprehensive general liability coverage of $1,000,000.

442

The first paragraph of the policy states, "[T]his policy provides insurance against loss to property, business liability and other described coverages." Section II of the policy, entitled "Business Liability and Medical Expense Insurance," contains a subsection entitled "Comprehensive General Liability Insurance" which provides: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage or personal injury to which this insurance applies . . .." The "Persons Insured" provision of Section II—the center of one of the issues in this case—states:

Each of the following is an insured to the extent set forth below:

1. if the named insured is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which the individual is the sole proprietor, and the spouse, and the employees of the named insured with respect to the conduct of such a business;

2. if the named insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner, member, or employee thereof but only with respect to his liability as such;

3. if the named insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, member of the board of trustees, directors or governors, stockholders or employee thereof while acting within the scope of his duties as such;

. . ..

The policy defines "insured" as "any person or organization qualifying as an insured in the 'Persons Insured' provision of the applicable insurance coverage."

Besides the eight-unit apartment building, the Dimmers jointly owned two other properties: their home at 111 South Main Street and a lot which contained a twenty-four-foot by thirty-foot storage building which the Dimmers called the "red shed."

Of the three properties the Dimmers co-owned, the apartment building was the only property D&R Rentals operated. The partnership had a separate checking account under the name D&R Rentals.

Ronald and Louise Dimmer originally purchased the red shed to store personal items. The Dimmers paid the red shed's repair expenses, property taxes, and special assessments out of their personal funds. The red shed property was insured under the Dimmers' homeowner's policy with General Casualty Insurance Company. The Dimmers stored items in the red shed that they used in connection with personal activities, Saukville Plumbing (another business Dimmer co-owned and operated), the eight-unit apartment building, and a combination of those businesses and properties. For example, the items kept in the red shed included: water heating units for Saukville Plumbing's use; roofing material for use at home and at Saukville Plumbing; beds; and lumber used at home, at the red shed, and at the eight-unit apartment building.

Dimmer stored items he used at the apartment building in the red shed out of necessity because the apartment building had insufficient storage space—a four-foot by five-foot storage area. The items Dimmer used at the apartment building but stored in the red shed included wainscotting, insulation, gardening equipment,

tree-trimming equipment, asphalt sealer, tools, lumber, and a forty-foot ladder.

Dimmer personally maintained his home, the red shed, and the apartment building. He used a tractor mower to cut the lawn at all three properties. Dimmer bought the tractor and paid for its repairs with personal funds. The partnership did not depreciate the tractor. Dimmer stored the tractor at both his home and the red shed. He kept the tractor's mower and snowblower attachments in the red shed.

On May 20, 1983, Dimmer decided to mow the lawn at the eight-unit apartment building. He had the tractor at his home that day, and Dimmer drove the tractor the five blocks from his home to the apartment building. He brought his four-year-old granddaughter Stephanie along on his lap.

When Dimmer finished his work at the apartment building, he placed Stephanie in the trailer which was hooked to the tractor and drove three blocks to the red shed. When he arrived at the red shed lot, Dimmer unhooked the trailer and left it on a strip of grass outside the gate. Dimmer then entered the red shed lot through the gate and began mowing the lawn. As Dimmer mowed, Stephanie climbed out of the trailer and wandered onto the lot. Dimmer negligently ran over Stephanie's leg while backing up the tractor. Stephanie was severely and permanently injured.

Stephanie and her parents sued Dimmer; General Casualty (the Dimmers' homeowner's insurance provider); Saukville Plumbing; Cera-Mite; and American Family. Upon motions duly made for summary judgment, the circuit court dismissed the complaint against Saukville Plumbing and General Casualty. Stephanie and American Family both moved for summary judgment on the issue of whether the American Family pol-

icy covered Dimmer's liability. The circuit court concluded that the American Family policy covered Dimmer's liability in two alternate ways. First, the policy covered Dimmer because the comprehensive general liability provision covered a partnership in which Dimmer was a partner; therefore, under the aggregate theory of partnership, the policy covered Dimmer as an individual. Second, the policy covered Dimmer because Dimmer had acted in the ordinary course of the partnership business at the time of the accident.

The court of appeals reversed. First, the court of appeals held that the comprehensive general liability provision did not cover Dimmer as an individual because such a result would "not reflect the intention of the parties, viewed from the standpoint of how a reasonable insured would understand the policy" and would transform a business-related policy into a personal liability policy. *Grotelueschen,* 163 Wis. 2d at 677. Second, the court of appeals concluded that Dimmer had not acted as a partner at the time of the accident because mowing the red shed's lot had too tenuous a link to D&R Rentals' partnership. *Id.* at 680–83.

We review an order for summary judgment using the same methodology as a trial court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate if there is no genuine issue about both the material facts and the inferences that can reasonably be drawn from those facts. *See* sec. 802.08(2), Stats.; *Grams v. Boss,* 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980). A motion for summary judgment carries with it the "explicit assertion that the movant is satisfied that the facts are undisputed and that on those facts he is entitled to judgment as a matter of law." *Powalka v. State Mut. Life Assurance Co.,* 53 Wis. 2d

513, 518–20, 192 N.W.2d 852 (1972). Therefore, when only one reasonable inference can be drawn from those undisputed facts as a matter of law, reciprocal motions for summary judgment waive the right to a jury trial. *Id.* The parties made reciprocal motions for summary judgment on the same issue. They relied on the same undisputed facts. Additionally, in their briefs and at oral argument, the parties agreed that there is no issue as to any material fact. Accordingly, we determine whether the undisputed material facts entitle Stephanie or American Family to judgment as a matter of law.

The parties agree that the policy terms are unambiguous. When an insurance contract contains unambiguous terms, we do not construe those terms, but simply apply them to the facts. *Kremers-Urban Co. v. American Employers Ins.,* 119 Wis. 2d 722, 736, 351 N.W.2d 156 (1984). The application of those terms to established facts presents a question of law which we review without deference to lower courts. *Thompson v. State Farm Mut. Auto. Ins.,* 161 Wis. 2d 450, 455–56, 468 N.W.2d 432 (1991).

We give unambiguous terms in a policy their "plain meaning"—the meaning they would have in the mind of a reasonable insured lay person. *Kremers-Urban,* 119 Wis. 2d at 735; *Bertler v. Employers Insurance of Wausau,* 86 Wis. 2d 13, 18, 271 N.W.2d 603 (1978). Thus, we read unambiguous terms from the objective standpoint of what a reasonable insured would understand the policy to mean, not from the standpoint of what the insurer intended. *Kremers-Urban,* 119 Wis. 2d at 735.

Stephanie contends that the policy covers Dimmer because the policy covers the partnership, and, in Wis-

consin, a partnership is not a separate entity, but simply an aggregate of the individual partners. Therefore, the argument goes, the policy covers Dimmer individually whether or not he acted in the ordinary course of the partnership business at the time of the accident.

Wisconsin law views a partnership as an aggregate for some purposes and as an entity for others. *See generally Kalson v. Industrial Comm.,* 248 Wis. 393, 397-98, 21 N.W.2d 644 (1946); *Thomas v. Industrial Comm.,* 243 Wis. 231, 239, 10 N.W.2d 206 (1943). For example, a partnership conveys and holds title to property as a separate entity. Sections 178.05 and 178.07, Stats. However, the definition of a partnership—"an association of 2 or more persons to carry on as co-owners a business for profit"—views the partnership as an aggregate. Section 178.03(1), Stats. Thus, whether Wisconsin views a partnership as a separate legal entity or an aggregate of individual partners depends on the issue. *See* A. Ladru Jensen, *Is a Partnership Under the Uniform Partnership Act an Aggregate or an Entity?,* 16 Vand. L. Rev. 377, 384 (1963).

When the issue is insurance coverage and a policy names the insured as a partnership and lists the individual partners in describing the named insured, the policy covers both the partnership and the partners as individuals. *McDonald v. Aetna Casualty & Surety Co.,* 47 Wis. 2d 235, 238, 177 N.W.2d 101 (1970). In *McDonald,* the Aetna policy listed the named insured as the partnership and then listed the individual partners. *Id.* at 237. The *McDonald* court eventually denied coverage on another ground. However, before it did, the court discussed the entity/aggregate distinction, then said,

> [H]ere, particularly because the Aetna policy names the partnership as the insured and then goes on to list the names of the individual partners in describing the named insured, we hold that the policy must be read to cover the partners as individuals, as well as the partnership as an entity.

*Id.* at 238.

The American Family policy in this case identifies the named insured as a partnership and then goes on to list the individual partners, "Dimmer, Ronald E. & Louise J[,]" as named insureds. The policy also gives the Dimmers' home address, not the address of the apartment building, as the address of the named insured. Applying *McDonald's* rationale to these facts would appear to compel us to hold that the policy covers Dimmer as an individual. However, American Family argues that *McDonald* does not control here because the policy in *McDonald* did not have a "Persons Insured" clause like the one in American Family's policy.

American Family claims that the second clause of its "Persons Insured" provision restricts partnership liability. The provision reads as follows:

> Each of the following is an insured under this insurance to the extent set forth below:
> 1. if the named insured is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which the individual is the sole proprietor, and the spouse, and the employees of the named insured with respect to the conduct of such a business;
> 2. if the named insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any

449

partner, member, or employee thereof but only with respect to his liability as such;

 3. if the named insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, member of the board of trustees, directors or governors, stockholders or employee thereof while acting within the scope of his duties as such;

 . . ..

American Family reads this provision as restricting its coverage to coverage of business-related activity.

The phrase "but only with respect to his liability as such" in the second clause of this provision refers to the words "partner, member or employee." This reading leaves the first half of this clause unmodified by this phrase. A reasonable insured would thus read the first half of this clause as follows: "if the named insured is designated as a partnership, the partnership so designated." Thus, besides covering partners and partnership employees only with respect to their liability as such, the policy covers the partnership. The question is whether the policy restricts coverage of the partnership.

American Family cites secs. 178.06 and 178.10, Stats., for the proposition that a partnership cannot incur liability that is not related to the partnership business. American Family tells us: "There is no qualifying language limiting the coverage for 'the partnership' to business activity, because, obviously, a partnership could incur no other kind of liability." This argument begs the question of what partnership liability is under this policy. Under the aggregate theory of partnership, a partnership consists of an aggregate of its partners. A number of cases have relied on the aggregate theory of

partnership to conclude that if a policy designates the named insured as a partnership and also lists the individual partners in describing the named insured, the policy covers the partners as individuals. *McDonald*, 47 Wis. 2d at 238; *see also Nationwide Mut. Ins. Co. v. U.S. Fid. & Guar. Co.*, 529 F. Supp. 194 (E.D. Pa. 1981); *Ohio Casualty Insurance Company v. Fike*, 304 So. 2d 136, 137 (Fla. Dist. Ct. App. 1974). *Contra McKinney v. Truck Insurance Exchange*, 324 S.W.2d 773 (Mo. Ct. App. 1959). The aggregate theory supports finding coverage in this case as well. More importantly, because the declarations page lists Ronald Dimmer individually and his home address under "Named Insured-Address" before designating the named insured as a partnership, the policy language alone supports finding coverage.

American Family maintains that reading the policy as a whole compels a different result. We attempt to read a policy in a way that gives meaning to every provision. *Stanhope v. Brown County*, 90 Wis. 2d 823, 848–49, 280 N.W.2d 711 (1979). However, American Family's argument lacks merit. First, reading the "Persons Insured" provision as a whole contradicts American Family's argument: Though the clause preceding the partnership clause limits liability to business-related liability of individuals, the partnership provision does not limit liability to business-related liability; it covers the partnership without restriction. Additionally, the clause following the partnership clause covers organizations other than partnerships without a business-related restriction.

Second, although the policy is entitled a "businessowners" policy and the comprehensive general liability section comes under the heading "Business Liability and Medical Expense Insurance," other policy provisions would suggest to a reasonable insured that the policy

does not restrict comprehensive general liability coverage to business-related liability. The provision for comprehensive general liability on the declarations page does not come under a heading of "Business Liability" and in no way suggests a business-related restriction. Additionally, the policy says it covers "loss to property, business liability and other described coverages." The policy places no express limit on partnership liability. Reading the policy as a whole supports our conclusion that American Family's comprehensive general liability provision covers Dimmer as an individual.

American Family asserts that this result changes a business policy to a personal liability policy. Yet, we do not consider the policy from the standpoint of what American Family intended, but from the standpoint of a reasonable insured. Additionally, we can presume American Family knew of *McDonald* when it wrote this policy. *Krause v. Massachusetts Bay Ins. Co.*, 161 Wis. 2d 711, 718, 468 N.W.2d 755 (Ct. App. 1991). Consequently, we hold that the policy covers Dimmer as an individual.

Having concluded the policy covers Dimmer, we need go no further. However, because we differ with the court of appeals in our analysis of the next issue and because the court of appeals' discussion is the most recent of only a handful of Wisconsin cases to discuss the issue, we address the issue of partnership-related negligence.

Assuming the policy covers only partnership-related liability, was Dimmer acting in the ordinary course of the partnership at the time of the accident? Under sec. 178.10, Stats., a partnership incurs liability for loss or injury caused to nonpartners by "any wrongful act or

omission of any partner acting in the ordinary course of the business of the partnership . . .."

Stephanie argues that because the apartment building had insufficient storage space, Dimmer had to store items related to the apartment building and its rentals in the red shed; therefore, Dimmer was acting in the ordinary course of the partnership when he maintained the red shed's lot. American Family counters that mowing the red shed's lawn does not have a sufficiently close link to the apartment building to equal acting in the ordinary course of D&R Rentals' partnership.

American Family's policy does not limit coverage to partnership activities of a specific type or occurring at a specific location. A reasonable insured would read the policy terms as covering any partnership activity.

A murky line divides partnership-related negligence from nonpartnership-related negligence. *See generally* Alan R. Bromberg & Larry E. Ribstein, *Bromberg and Ribstein on Partnership,* sec. 4.07 at 4:80–84 (vol. I 1991). If Dimmer mowed the red shed's lawn solely for his own benefit or purposes, then he did not act in the ordinary course of D&R Rentals' business. *Zutter v. O'Connell,* 200 Wis. 598, 600, 229 N.W. 73 (1930) (partner driving partnership vehicle to pick up friend to go fishing not acting within scope of partnership); *see also Anderson v. McBurney,* 160 Wis. 2d 866, 880, 467 N.W.2d 158 (Ct. App. 1991) (discussing partnership liability for intentional torts). Therefore, the question is whether maintaining the red shed's premises benefitted D&R Rentals or furthered its purposes.

D&R Rentals carried on a business of renting an apartment building. As Stephanie notes, under the safeplace statute, Dimmer had a duty to maintain the apartment building. Further, as a businessperson, Dimmer had to maintain the apartment building in order to

453

attract renters. To maintain the apartment building, Dimmer needed tools and materials. Because he had insufficient space at the apartment building, he had to store those tools and materials in the red shed. Therefore, maintaining the red shed and its premises benefitted the partnership.

The fact that Dimmer stored items in the red shed that he did not use at the apartment building does not change our conclusion that maintaining the red shed and its premises benefitted the partnership. An act can further part personal and part business purposes and still occur in the ordinary course of the partnership. *Wolfe v. Harms*, 413 S.W.2d 204 (Mo. 1967) (partner in service station testing car brakes while driving customer to hospital acting within scope of partnership under "dual purpose" doctrine); *cf. Olson v. Connerly*, 156 Wis. 2d 488, 499, 457 N.W.2d 479 (1990) (scope of employment analysis).

Additionally, the fact that the Dimmers did not depreciate the tractor and paid for it with personal funds has little relevance to whether maintaining the red shed's premises benefitted the partnership. Moreover, what relevance this fact might have is diminished because the Dimmers have relatively limited financial sophistication. In fact, the Dimmers bought the apartment building itself with personal funds. D&R Rentals had no formal partnership agreement and filed no partnership tax return. Their partnership bore little resemblance to more organized and risk-conscious partnerships like law firms. For the same reasons, the fact that Dimmer insured the red shed with his homeowner's policy has slight relevance.

Because Dimmer kept items in the red shed that he used to maintain the apartment building, maintaining the red shed's premises benefitted D&R Rentals. Mowing the lawn at the red shed may not have had an intimate connection to the Dimmers' partnership. However, the policy language does not require such a connection. The policy's coverage stops where the policy says it does, and the American Family policy covers partnership activities without restriction. We conclude that Dimmer was acting in the ordinary course of the partnership at the time of the accident.

*By the Court.*—The decision of the court of appeals is reversed.

JUSTICES DONALD W. STEINMETZ and JON P. WILCOX, took no part.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* I disagree with the majority opinion for two reasons: First, I disagree with the majority's holding that the insurance policy covers the liability of the insured partners, as individuals, for every negligent act even though they are acting outside the scope of the partnership at the time the liability is incurred. Secondly, I disagree with the majority's holding that, as a matter of law, the partner was acting within the scope of the partnership at the time of the injury.

I conclude that the policy covers individual partners only for liability incurred while acting in their capacity as partners. I further conclude (1) that the issue the majority sets forth, whether the partner in this case acted in the ordinary course of the partnership at the time of the injury, is a question for the jury, not for the court, and (2) that when parties file reciprocal (sometimes referred to as cross or bilateral) motions for sum-

mary judgment, they do not necessarily waive their right to present their case to the trier of fact. I would remand the case for a jury determination on the issue of whether the partner in this case acted in the ordinary course of the partnership at the time of injury.

## I.

The first issue, a question of law properly decided on summary judgment, involves the interpretation of American Family's "businessowners package policy." The policy defines the persons insured under Section II titled "Business Liability and Medical Expense Insurance" as follows: "[I]f the named insured is designated in the declaration as a partnership or joint venture, the partnership or joint venture so designated and any partner, member or employee thereof *but only with respect to his liability as such . . .*" (emphasis added).

This clause is standard in numerous insurance policies. See Susan J. Miller and Philip Lefebvre, *Miller's Standard Insurance Policies Annotated General Liability Forms,* Form GLCGL, vol. 1, p. 411 (1988). In *Miller's* the cited cases interpreting this standard clause in the partnership context illustrate that the clause provides coverage to individual partners only for liability incurred while they are acting in their capacity as partners. *See Jefferson Ins. Co. of New York v. Curle,* 771 S.W.2d 424, 427 (Tenn. App. 1989) (the policy was interpreted as providing coverage to the individual partners only in their capacity as partners); *American States Ins. Co.,* 826 F.2d 888 (9th Cir. 1987) (the policy was interpreted as covering a partner who was vicariously liable for the acts of an agent of the partnership; the court did not consider whether coverage extended to individual

partners who were not acting as agents of the partnership).

Neither the majority opinion nor the parties' briefs cite any authority that directly supports the majority's interpretation of the policy. The majority relies on *McDonald v. Aetna Casualty and Surety Co.,* 47 Wis. 2d 235, 177 N.W.2d 101 (1970); *Nationwide Mut. Ins. Co. v. U.S. Fid. & Guar. Co.,* 529 F. Supp. 194 (E.D. Pa. 1981); and *Ohio Cas. Ins. Co. v. Fike,* 304 So. 2d 136, 137 (Fla. Dt. Ct. App. 1974). Each of these cases involves coverage of a partner's personal automobile under an automobile insurance policy listing the partnership and its members as insureds.[1] The policy language relating to the automobiles at issue in these cases differs from the standard persons insured clause at issue in the case before us. I thus conclude that the cases upon which the majority opinion relies are not pertinent.

Reading the American Family policy from the perspective of a reasonable person in the position of the insured, *Wood v. American Family Mut. Ins. Co.,* 148 Wis. 2d 639, 652, 436 N.W.2d 594 (1989), and considering the reasonable expectations of a person buying a "Businessowners' Package Policy" providing "Business Liability and Medical Expense" insurance, I conclude, as did the three judges of the court of appeals, that the American Family businessowners package policy insures individual partners only for liability incurred while acting in their capacity as partners.

---

[1] The policies at issue in *Nationwide* and *Ohio Casualty* provided coverage for liability arising from the use of an automobile by relatives of a partner. Both courts considered the reference in the policies to relatives of the partner to indicate that the policies covered the partners as individuals apart from the partnership.

## II.

The next question addressed by the majority is whether the partner in the case at hand was acting in the capacity of a partner at the time of the injury, or as the majority opinion states, whether the partner was acting within the scope of the partnership. If I were in the majority I would not reach this issue. First, as the majority acknowledges, the issue has no relevance for this case because the majority has decided that the policy covers a partner for liability incurred when acting outside the partnership. Second, because the issue of the scope of the partnership is fact specific and this case presents an unusual fact situation, the discussion in the majority opinion will have little relevance for other cases.

Nevertheless, I write because I believe that the majority opinion errs in its discussion of summary judgment on the issue of whether a partner has acted within the scope of the partnership.

Motions for summary judgment and directed verdict have substantially the same function.[2] Both are appropriate only when there is no dispute about both the material facts and the factual inferences reasonably drawn from them, or when the material facts are not in dispute and only one reasonable inference or conclusion can be drawn as a matter of law. See *Gouger v. Hardtke,* 167 Wis. 2d 504, 482 N.W.2d 84 (1992) (while the historical facts were undisputed, the defendant's intent, a fac-

---

[2]The directed verdict and the summary judgment rest on the same theory: No genuine issue of material fact needs to be resolved by the fact-finder; the moving party is entitled to have a judgment on the merits entered in his or her favor as a matter of law. 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure: Civil 2d,* sec. 2713.1 (1983 and 1992 Supp.); 6 *Moore's Federal Practice* para. 56.13 (1992).

tual inference to be drawn from the undisputed historical facts, was disputed; summary judgment was not appropriate); *Hennekens v. Hoerl*, 160 Wis. 2d 144, 172, 465 N.W.2d 812 (1991) (Shirley S. Abrahamson, J. dissenting, citing *Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1981)) (the reasonable person standard is an issue of "legal fact" for the fact-finder when undisputed material historical facts may be subject to conflicting inferences or conclusions). See also 28 *Fed. Proc., L. Ed.* sec. 62:548 (1984).

While the parties in this case agree on the historical facts, they disagree about the "legal facts," that is the inferences or conclusions, that may be drawn from the historical facts.[3] By moving for summary judgment, each party asked the circuit court to rule that the conclusion it drew about whether the partner was acting in the ordinary course of the partnership was the only reasonable conclusion that could be drawn and that therefore the issue need not be submitted to trial.

The parties' disagreement about the inferences to be drawn from the partner's conduct does not involve an interpretation of the policy. The policy incorporates liability according to partnership law. The policy agrees to pay on behalf of the partner all sums he or she is legally obligated to pay as damages in his or her capacity as partner. A dispute about whether a person is liable in his or her capacity as a partner acting within the scope of the partnership is resolved by a fact-finder. See, *e.g.*, Wis. JI—Civil, No. 4035, Servant: Scope of Employment.[4]

---

[3]For a discussion of historical facts, legal facts and summary judgment, see Daniel P. Collins, *Summary Judgment and Circumstantial Evidence*, 40 Stan. L. Rev. 491 (1988).

[4]See Alan R. Bromberg and Larry E. Ribstein, *Bromberg and Ribstein on Partnership* sec. 4.07 at 4:80 (vol. I 1991), analogizing

I conclude that a court cannot say in this case that, as a matter of law, the partner was acting within or outside the scope of the partnership. As the majority opinion concedes, "a murky line divides partnership-related negligence from nonpartnership-related negligence." Majority op. at 453. In this case a court must conclude that a rational jury could return a verdict in favor of either party. Therefore, I conclude that the summary judgment motions relating to whether the partner was acting within or outside the scope of the partnership business must be denied.

The majority relies on *Powalka v. State Mut. Life Ins. Co.*, 53 Wis. 2d 513, 518-519, 192 N.W.2d 852 (1972). The *Powalka* court did state that "the reciprocal motions for summary judgment by the defendant and the plaintiff constituted a waiver of any right to jury trial that might have theretofore existed."[5] The *Powalka* court reached the conclusion that a jury was waived in that case because the circuit court had properly determined that the trier of fact could reach only one conclusion from the undisputed historical facts, namely that the insured's conduct arose out of an actual intent to

the question whether a partner is acting in the scope of the partnership to the question whether the servant is acting in the scope of employment.

[5]The Powalka court continued stating "A motion for summary judgment carries with it the explicit assertion that the movant is satisfied that the facts are undisputed and that on those facts he is entitled to judgment as a matter of law. We pointed out in Wiegand v. Gissal . . . '. . . the practical effect of the bilateral summary judgment motions was the equivalent of a stipulation as to the facts.' "

For a discussion of reciprocal motions, see *Ziegler Co. Inc. v. Rexnord*, 139 Wis. 2d 593, 595, n.1, 407 N.W.2d 593 (1987).

Neither the parties' briefs nor the decisions of the circuit court or court of appeals discuss summary judgment on this issue.

defraud. 53 Wis. 2d at 520. Considered within its factual context, *Powalka* stands for the widely accepted general rule that a party is not deprived of a jury trial when, as a matter of law, no triable issue exists for the factfinder.

This court has held that a circuit court may deny reciprocal motions for summary judgment on the ground that unresolved issues remain to be determined at trial. If the court determines that unresolved issues remain to be tried, the reciprocal motions for summary judgment do not constitute a waiver of a jury trial. *Capitol Sand & Gravel Co. v. Waffenschmidt,* 71 Wis. 2d 227, 235–36, 237 N.W.2d 745 (1976).[6] Other Wisconsin cases discussing reciprocal motions for summary judgment similarly conclude that summary judgment is appropriate when the only issues presented are questions of law for the court. The court of appeals explained in *Stone v. Seeber,* 155 Wis. 2d 275, 455 N.W.2d 627 (Ct. App. 1990), that cross motions for summary judgment sometimes, but not

---

[6]Concluding that reciprocal motions for summary judgment waive a jury trial would be adopting a rule that has long been rejected in the analogous context of reciprocal motions for a directed verdict.

The common law rule was that when all parties, without reservation, moved the court for a directed verdict, the motions constituted a stipulation to waive jury trial and submit the entire case to the court for decision. This rule was a trap, making it unsafe for a party to move for a directed verdict, and was a useless restriction on the right of trial by jury. John E. Ahrens, *Reservation of Right to Go To The Jury Upon Motion for Directed Verdict by All Parties,* 31 Marq. L. Rev. 172 (1947).

Section (Rule) 805.14(8), Stats. 1989-90 (formerly sec. 270.26, Stats. 1973), like the federal rules of civil procedure, changed the common law to provide that "a motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdict."

461

always, imply a stipulation of facts.[7] Furthermore, wrote the court of appeals, both parties might erroneously conclude that no factual dispute exists when in reality one does. Determining the existence of a genuine issue of material fact is a question of law for the court, not for the parties. The court may not overlook a factual issue even if the parties stipulate that none exists. See also 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure: Civil 2d,* sec. 2720 at 19 (1983 and 1992 Supp.); 6 *Moore's Federal Practice* para 56.13 (1992); 28 *Fed. Proc., L. Ed.* sec. 62:549 (1984).[8]

---

[7]*See also Ziegler Co. Inc. v. Rexnord,* 139 Wis. 2d 593, 595, n.1, 407 N.W.2d 593 (1987).

"... the fact that both parties simultaneously are arguing that there is no genuine issue of fact does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit. ... In short, the mere fact that both parties seek summary judgment does not constitute a waiver of a full trial or the right to have the case presented to a jury. There are basically three reasons why cross-motions ... do not necessarily indicate that the case is ripe for ... entry of judgment. First, the determination whether a genuine issue concerning a material fact exists is itself a question of law that must be decided by the court ... Second a party may argue that no issue of fact exists in the hope that his legal theory will be accepted, but at the same time he may maintain that there is a genuine factual dispute in the event his theory is rejected or his opponent's is adopted. ... The third reason that cross-motions must be considered separately and should not be interpreted necessarily to mean that judgment should be entered on one of them is that each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that he is entitled to a judgment as a matter of law. ..." 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure: Civil 2d,* sec. 2720 at 16–23 (1983).

See also 6 *Moore's Federal Practice* para 56.13 (1992).

[8]The Wisconsin summary judgment rule is patterned after Federal Rule 56. See sec. (Rule) 802.08, West's Wis. Stats. Annot.,

I believe it is error to read *Powalka,* as some cases do, to hold that when parties file reciprocal motions for summary judgment, the motions are necessarily equivalent to a stipulation of all factual issues, to a waiver of jury trial, and to an agreement that the case may be disposed of by the circuit court on summary judgment.[9]

In this case, the parties disagree about the "legal facts" to be inferred from the undisputed historical facts; rational judges have reached different conclusions in this case on the issue of whether the partner was acting within the scope of the partnership. I conclude that a rational jury could return a verdict in favor of either

---

vol. 42 A (1977). In interpreting our rules that are patterned after federal rules, this court looks to federal cases and commentary for guidance.

[9]Several cases quote *Powalka* without fully analyzing the holding or its application to the facts of the case before the court. *See, e.g., Silverton Enterprises, Inc. v. General Casualty Co.,* 143 Wis. 2d 661, 442 N.W.2d 154 (Ct. App. 1988); *Schwochert v. American Family Ins.,* 139 Wis. 2d 335, 345, 407 N.W.2d 525 (1987); *Streiff v. American Family Mutual Ins.,* 114 Wis. 2d 63, 337 N.W.2d 186 (1983); *Coca-Cola Bottling Co. v. LaFollette,* 106 Wis. 2d 162, 164, 316 N.W.2d 129 (Ct. App. 1982); *State ex rel. Grand Bazaar v. Milwaukee,* 102 Wis. 2d 208, 306 N.W.2d 255 (Ct. App. 1981).

For cases that interpret *Powalka* as I have, *see, e.g., Larsen v. Munz,* 166 Wis. 2d 751, 756, n.4, 480 N.W.2d 800 (1992); *Stone v. Seeber,* 155 Wis. 2d 275, 455 N.W.2d 627 (Ct. App. 1990); *Duhame v. Duhame,* 154 Wis. 2d 258, 264, 453 N.W.2d 149 (Ct. App. 1989); *Hanson v. Madison Service Corp.,* 150 Wis. 2d 828, 843, 443 N.W.2d 315 (Ct. App. 1989); *Ziegler Co., Inc. v. Rexnord, Inc.,* 139 Wis. 2d 593, 407 N.W.2d 873 (1987); *Capitol Sand and Gravel Co. v. Waffenschmidt,* 71 Wis. 2d 227, 237 N.W.2d 745 (1975). *See also Wiegand v. Gissal,* 28 Wis. 2d 488, 495a, 137 N.W.2d 740 (1965), upon which the *Powalka* court relied.

party. I would therefore hold that the circuit court erred in deciding this issue on motions for summary judgment.

For the reasons set forth, I would decide, as did the court of appeals, that the American Family policy covered individual partners only for liability incurred in their capacity as partners. I would remand the case to the circuit court for a jury trial on the question of whether the partner was acting within the scope of the partnership at the time of the injury.

For the reasons set forth, I dissent.

I am authorized to state that JUSTICE WILLIAM A. BABLITCH joins part II of this dissent.