Ozaukee Sand & Gravel Company, Respondent, vs. City of Milwaukee and others, Defendants: Froemming, Appellant.

*March 11—April 13, 1943.*

40

For the appellant there was a brief by *Tierney, Waddleton, Dela Hunt & Tierney* of Milwaukee, and oral argument by *Joseph E. Tierney.*

For the defendant city of Milwaukee there was a brief by *Walter J. Mattison*, city attorney, and *Chas. W. Babcock*, first assistant city attorney, and oral argument by *Mr. Babcock.*

For the respondent Ozaukee Sand & Gravel Company there was a brief by *Houghton, Neelen & Bullinger* of Milwaukee, and oral argument by *Albert B. Houghton.*

For the respondent truckers there was a brief by *Tietelbaum, Chudnow & Polland,* attorneys, and *H. L. Kastrul* of counsel, all of Milwaukee, and oral argument by *A. M. Chudnow.*

FAIRCHILD, J.    The issue brought here on this appeal is the single question of whether sub. (4) of sec. 289.53, Stats., gives the claims of respondents an advantage over the claim of the appellant.

The statute relied on by respondents provides that all money or warrants paid to or to become due to any principal contractor or subcontractor for "public improvements" shall constitute a trust fund for the benefit of materialmen and laborers for the payment of all claims on such public improvement.    This statute was considered in *Murphy v. National*

*Paving Co.* 229 Wis. 100, 281 N. W. 705. In reviewing the history of its enactment it was shown to be applicable to all cities including those of the first class.

Appellant's contention is that the claims of respondents are not under that section (sub. (4)) because they do not arise out of a protected relation based on a "public-improvement" contract, that therefore there can be no trust-fund benefit for them under the statute. By this action he seeks to vindicate his right to the moneys already collected by him and to the balance in the city's hands assigned to him by his debtor.

If the purchase of the material can be held to be a contract of the protected class, then under the doctrine of *Morris F. Fox & Co. v. State,* 229 Wis. 44, 281 N. W. 666, the respondents' claims, although not carrying the right of lien, would be entitled to precedence over appellant's general "unrelated" claim because they would then arise under the contract, out of the job for which the fund is payment.

It has frequently been stated that this protection to laborers and materialmen dealing with contractors was to be accomplished by writing into the laws governing contracts for public works the terms of certain statutes which in the first instance were particularly made applicable to contracts between private builders and contractors. Similarity of the commercial relation between lien claimants on such private jobs and the men and concerns situated in a like manner with relation to construction jobs described as public improvements made it desirable to create some method under law which would protect the interests and give security for the undertaking of the latter equal to that provided for the former. The first subsections of sec. 289.53, Stats., exclude cities of the first class because in that class a lien right was provided by ch. 261, Laws of 1882 (sec. 26.11, Milwaukee city charter of 1934), which gives that protection to those dealing with a city of the first class under contracts made with the board of

public works (now a commissioner). See *Worden-Allen Co. v. Milwaukee*, 171 Wis. 124, 176 N. W. 877. It seems apparent that the purpose of including cities of the first class in sub. (4) was to cover or supplement the rights of those dealing with the board of public works. We now, therefore, consider the characteristics of the relationship to be thus provided for.

The trial court concluded that the repair and maintenance work in which the sand and gravel was used was a public improvement and was brought within the sphere of sub. (4). But we do not find any reference in the statutes referred to dealing with public contracts to anything so indicating, especially when the work is done by the city itself through its various departments and other than by contract with the commissioner of public works. The contract as entered into was to purchase material to be used by the city in what may be called incidental maintenance and repairs. There is no suggestion of an intent to put the transaction of the board of purchases on the same basis as are the contracts with the commissioner of public works for public improvements. That the contracts of the two boards are different is shown by the limitation on the authority of the board of purchases in sec. 17.06, Milwaukee city charter of 1934, where it is stated the board has power to purchase "materials, supplies and equipment for the use of all departments, boards or commissions comprising the city government. . . . This power and authority of the central board of purchases to make all purchases shall not be construed to include contracts for public works where materials, supplies or equipment are furnished by the contractor as part of the requirements of his contract."

While the protection extended by sub. (4) reaches, so far as cities of the first class are concerned, those contracts and resulting relations under which lien rights exist in favor of laborers and materialmen, it is supplemental thereto and makes provision for some items not lienable but requires that those

■

items be related to the particular construction or public work. It does not provide for the creation of a trust fund for those who may deal with a city in a capacity other than laborer or materialman working under contracts for public works. A well-grounded plan appears if the statute is so read. This interpretation gives to each provision of the statute its proper place and relation to the other. It preserves the distinction pointed out in *Standard Oil Co. v. Clintonville,* 240 Wis. 411, 3 N. W. (2d) 701, between mere sales and contracts for public improvements requiring both labor and material.

The trust benefit is added to the more or less complex system of contracting where the contractor uses credit as capital, and it is intended, as already suggested, to carry to the laborer and materialman under the contractor on public works some adequate protection against loss, at least to the extent the same interest would find protection under contractors for private jobs.

In the case at bar both the nature of the contract and the type of job called for indicate that this is not a contract for a public improvement within the meaning of sec. 289.53 (4), Stats. The Druecker-Kaestner contract is simply one for the sale of material to the city, although the sand and gravel furnished were used for repair and maintenance work. Purchases by the central board of purchases for general city use are not the same as contracts made by and with the commissioner of public works, even though as here the agreement is to make purchases for a fixed price during a particular season. We are, therefore, of the opinion that the trial court erred in holding that the respondents are entitled to the protection of the trust-fund statute and in ordering that their claims be given precedence over the claim of appellant.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with this opinion.