BLASER and another, Copartners, Plaintiffs and Respondents, v. DON GANSER & ASSOCIATES, INC., Defendant: AMERICAN AUTOMOBILE INSURANCE COMPANY, Defendant and Appellant.

*February 6—April 2, 1963.*

404

The cause was submitted for the appellant on the briefs of *Quarles, Herriott & Clemons,* attorneys, and *William K. McKibbage* of counsel, all of Milwaukee, and for the respondents on the brief of *Warren E. Kuehling* of Madison.

CURRIE, J. The sole issue is whether sec. 289.16, Stats. 1957, is applicable to the instant performance bond so as to bring into play the one-year statute of limitations contained in sub. (2) of this statute.

The portions of sec. 289.16, Stats. 1957, material to this appeal provide as follows:

"(1) All contracts with the state involving $1,000 or more and all other contracts involving $100 or more for the performance of labor or furnishing materials when the same pertains to or is for or in or about any public improvement

or public work of whatsoever kind shall contain a provision for the payment by the contractor of all claims for labor performed and materials furnished, used or consumed in making such public improvement or performing such public work, . . . and no such contract shall be made unless the contractor shall give a bond, the penalty of which shall not be less than the contract price, conditioned for the faithful performance of the contract, and the payment to every person entitled thereto of all the claims for labor performed, and materials furnished for or in or about or under such contract, to be used or consumed in making such public improvement or performing such public work as in such contract provided and as above specified, such bond in the case of the state to be approved by the governor, of a county by its district attorney, of a city or village by its mayor or president, of a town by its chairman, of a school district by the director or president, and in case of any other public board or body by the presiding officer thereof. . . .

"(2) Any party in interest may, not later than one year after the completion of said contract, maintain an action in his own name against such contractor and the sureties upon such bond for the recovery of any damages he may have sustained by reason of the failure of said contractor to comply with said contract or with the contract between said contractor and subcontractors."

We deem it highly significant that although this statute uses the phrase "any public improvement or public work of whatsoever kind," it spells out various categories of governmental units and agencies, which the statute contemplates will contract for such improvements or work, when it lists who must act in behalf of such units or agencies in approving the required bond. These named contracting units and agencies are the state, a county, a city or village, a town, a school district, and "any other public board or body." It is obvious that the only category which might apply to the building corporation is that of "other public board or body."

Appellant surety company places great reliance on *State ex rel. Wisconsin University Bldg. Corp. v. Bareis* (1950),

257 Wis. 497, 502, 44 N. W. (2d) 259, wherein this court declared the instant building corporation "to be an agency of the regents, who, themselves, have no existence or function except as an agency of the state." Carried to its logical conclusion this quoted statement would make the building corporation an arm of the state and clothe it with the aura of a public body within the meaning of sec. 289.16, Stats. The facts in the *Bareis Case* presented a situation in which the building corporation was acting as the agent of the Board of Regents when it acquired certain properties at the express direction of the regents. Thus it was held that although legal title was in the building corporation, the beneficial owner was the state so that the property was exempt from property taxes under sec. 70.11 which then exempted property owned by the state.[2]

Nevertheless, the later case of *State ex rel. Thomson v. Giessel* (1955), 271 Wis. 15, 72 N. W. (2d) 577, distinguished the *Bareis Case* on the ground that the court was there concerned with a tax-exemption question. The *Giessel Case* held that the building corporation was not an arm or an agency of the state but that it stood in the same category as the State Public Building Corporation, *i.e.,* a private corporation organized for a public purpose. Similarly the building corporation in the instant case was not acting in the capacity of agent for the regents. The provisions of sec. 36.06 (6), Stats., have been carefully drafted to avoid such a result.

---

[2] In the instant situation, although the constructed housing units, apart from the land, are owned by the building corporation, these buildings are specifically exempted from property tax by reason of sub. (3) (c) of sec. 70.11, Stats., enacted by ch. 402, Laws of 1953. Sec. 70.11 provides in part:

"The property described in this section is exempted from general property taxes:

"(3) *Colleges and universities.*

"(c) All buildings, equipment and leasehold interests in land described in secs. 36.06 (6) and 37.02 (3)."

Since the building corporation is a private corporation and not an agency of the state, it does not constitute a "public board or body" within the meaning of sec. 289.16, Stats. Thus we conclude that the legislature did not intend to include improvements, or work contracted for, by the building corporation when it employed the phrase "public improvement or public work" in the statute, because that section designates a public officer to approve a bond in every situation in which such a bond is required. Therefore, we construe the statutory words "public improvement or public work" to mean any improvement or work undertaken by a unit of government or a public agency or board.[3]

Appellant contends that the use to which an improvement is put determines whether it is a "public improvement" within the meaning of the statute. Thus appellant argues that the buildings erected under the principal contract constitute a "public improvement" since they were intended to be university housing for married students. Appellant also points to the active role of the state engineer in approving the plans and specifications and preparing the principal contract, and to the approval of that contract by the governor.[4] The ap-

---

[3] In *Johnson-Foster Co. v. D'Amore Construction Co.* (1943), 314 Mass. 416, 50 N. E. (2d) 89, 148 A. L. R. 353, the question presented was whether a contractor's performance bond, sought to be enforced by a materialman, was governed by a statute which provided that officers or agents "who contract in behalf of any county, city, or town for the construction or repair of public buildings or other public works" require a performance bond. The court held that this statute did not apply to a city housing authority because it was a separate entity apart from the city. The court reached this conclusion even though other statutes exempted the real estate of a housing authority from ordinary mechanics' liens, although not for liens deriving from personal labor. Although the court determined that the bond sued upon was not a statutory bond, it did hold that plaintiff materialman could enforce the bond as a common-law obligation.

[4] Appellant also argues that the governor approved the instant performance bond when he approved the contract because the con-

proval of both the state engineer and the governor was expressly required under sub. (6) (b) 4 of sec. 36.06, Stats. 1957. Thus we cannot find that such approvals constitute an admission that the instant buildings were a public improvement or that the building corporation was a public body.

Appellant also relies upon a quotation from *State v. Board of Regents* (1949), 167 Kan. 587, 207 Pac. (2d) 373, cited in the *Giessel Case* at page 48, wherein a state-college student dormitory was declared to be a "public improvement." The issue in that case was whether such dormitory was an "internal improvement." The Kansas constitution, like that of Wisconsin, prohibits the state's engaging in internal improvements.[5] The conclusion reached was that student housing furthered the educational function of colleges and was not an internal improvement in the sense that such term was used in the Kansas constitution. The Kansas court was not concerned with a situation where student housing was being contracted for by a private corporation such as the instant building corporation. We do not consider this Kansas case to be of any assistance in resolving the question of statutory interpretation confronting us in the instant case.

Because of our determination that the instant performance bond was not required by sec. 289.16, Stats., it necessarily

tract provides that such bond is to be a component part of the contract. The governor's approval of the contract, however, antedated execution of the bond, and, therefore, could not constitute an express approval of the bond itself.

[5] In *Glendale Development v. Board of Regents* (1960), 12 Wis. (2d) 120, 133, 134, 106 N. W. (2d) 430, certiorari denied, 366 U. S. 931, 81 Sup. Ct. 1652, 6 L. Ed. (2d) 389, this court held that a private corporation, such as the instant building corporation, which is not an arm of the state, can do things in the nature of internal improvements which the state itself is barred by the constitution from doing. Nevertheless, *State ex rel. Wisconsin Development Authority v. Dammann* (1938), 228 Wis. 147, 277 N. W. 278, 280 N. W. 698, makes it clear that such a private corporation may not use state-appropriated funds for such purpose.

follows that the one-year statute of limitations set forth in sub. (2) of that section is inapplicable to the instant action.

*By the Court.*—Judgment affirmed.

Brown, C. J. (*dissenting*). I am sorry that I cannot agree with the majority of the court and must respectfully dissent for the following reasons:

It appears to me to be indisputable that this contract for the construction of these student housing units "pertains" to a public work or improvement and therefore requires a bond securing payment by the contractor for material and labor. Sec. 289.16, Stats.

The contractor did furnish a bond,—the one written by appellant, American Automobile Insurance Company. As the majority opinion says, the statute designates officials who should approve the bond in the event that governmental units or public boards or bodies are the entities with whom the principal building contractor has contracted for the erection of the public work or improvement.

It appears to be conceded that the building corporation is a private corporation, is not an agency of the state, and is not a public board or body. The conclusion seems to me inescapable that none of the officials designated to approve bonds have any statutory authorization to approve this bond. But that does not obviate the necessity of the principal contractor's giving bond since the contract is for a public work or improvement and sec. 289.16, Stats., commands that such a bond be given. All that happens is that the legislature for its own good reasons, or for no reason, did not say that the required bond must be approved by someone when the public work or improvement is contracted for by a private corporation.

The public work or improvement required a bond, per sec. 289.16 (1), Stats. The bond was given. No approval

412

was given but the statute did not require that it should be since the building corporation was not a governmental unit or a public board or body. I do not see any failure to comply with any of the demands of sec. 289.16. I consider this a good bond under the terms of sec. 289.16 and that statute applies.

The obligations of the bond are specified in the statute and sec. 289.16 (2) gives an interested party a right to maintain an action on the bond within one year after the completion of the contract. Plaintiff-respondent did not bring its action within that time. I consider its action should have been dismissed.

Mr. Justice WILKIE joins in this dissent.