IN the MATTER OF the LIQUIDATION OF WISCONSIN SURETY CORPORATION, a Wisconsin insurance corporation, A. Roy Anderson, Special Deputy Commissioner of Insurance of the State of Wisconsin, as liquidator:

H.L. MUNCH COMPANY, INC., Claimant-Appellant-Petitioner,

v.

A. Roy ANDERSON, Special Deputy Commissioner of Insurance of State of Wisconsin, as liquidator, Respondent.

Supreme Court

*No. 81–447. Argued February 3, 1983.—Decided March 1, 1983.*

(Also reported in 330 N.W.2d 768.)

For the appellant-petitioner there were briefs by *John T. Clark* and *Miller, Magyera & Clark, S.C.*, Milwaukee, and oral argument by *John T. Clark*.

For the respondent there was a brief by *Christopher J. Wilcox* and *La Follette, Sinykin, Anderson & Munson*, Madison, and oral argument by *Mr. Wilcox*.

STEINMETZ, J. The issue of the case is whether under sec. 779.14(1), Stats.,[1] a supplier who provides

[1] Sec. 779.14(1), Stats., reads:

"**779.14 Public works, form of contract, bond, remedy.** (1) All contracts with the state involving $2,500 or more and all other contracts involving $500 or more for the performance of labor or furnishing materials when the same pertains to any public improvement or public work shall contain a provision for the payment by the prime contractor of all claims for labor performed and materials furnished, used or consumed in making the public improvement or performing the public work, including, without limitation because of enumeration, fuel, lumber, building materials, machinery, vehicles, tractors, equipment, fixtures, apparatus, tools, appliances, supplies, electric energy, gasoline, motor oil, lubricating oil, greases, state imposed taxes, premiums for worker's compensation insurance and contributions for unemployment compensation. A contract shall not be made unless the prime contractor gives a bond issued by a surety company licensed to do business in this state. The department of administration may, for state contracts, waive the requirement that contractors furnish bonds when adequate guarantees or warranties are provided for by contract. The bond shall carry a penalty of not less than the contract price, and shall be conditioned for the faithful performance of the contract and the payment to every person entitled thereto of all the claims for labor performed and materials furnished under the contract, to be used or consumed in making the public improvement or performing the public work as provided in the contract and this subsection. The bond shall be approved in the case of the state by the state official authorized to enter such contract, of a county by its district attorney, of a city by its mayor, of a village by its president, of a town by its chairman, of a school district by the director or president and of any other public board or body by the presiding officer thereof. No assignment, modification or change of the contract, or change in the

materials which are used or consumed in the performance of a bonded public improvement contract is entitled to recover against the surety where the materials were provided initially pursuant to a general agreement with the prime contractor without regard to the specific public improvement contract. The circuit court for Dane county, the Honorable William F. Eich, answered "no." The court of appeals affirmed in an unpublished opinion. We reverse.

The H.L. Munch Co., Inc. (Munch Company) and State Sand and Gravel Company (State Sand) had done business together for many years, principally with State Sand being the ready-mix supplier to the Munch Company. In May, 1970, State Sand successfully bid on the Lannon and Menomonee Falls highway projects. Shortly thereafter, Henry Munch, president of the Munch Company, and William Retzlaff, president of State Sand, agreed that State Sand would lease Munch Company equipment for use on the Lannon project for $25,000 and for use on the Menomonee Falls project for an additional $25,000.

Several months later, State Sand was the successful bidder on the Dane and Marathon counties highway projects. Munch agreed with Retzlaff that State Sand would lease Munch Company's equipment for use on the Dane county project for $55,000 and on the Marathon county project for $75,000.

The Munch Company equipment was used on the Lannon and Menomonee Falls projects, and as it was released from those projects, it was sent to the Dane and Marathon Counties projects where it was also used. By

work covered thereby, or any extension of time for the completion of the contract may release the sureties on the bond. Neither the invitation for bids, nor the person having power to approve the prime contractor's bond, may require that such bond be furnished by a specified surety company or through a specified agent or broker."

the end of the 1970 construction season, approximately 50 percent of the work on the Dane and Marathon Counties projects for which the Munch Company's equipment was needed was completed.

Accordingly, the Munch Company billed State Sand for the equipment listing each project separately as follows:

| | |
|---|---|
| Lannon | $25,000 |
| Menomonee Falls | $25,000 |
| Dane County | $27,500 |
| Marathon County | $37,500 |

After State Sand failed to pay the Munch Company for the rental value of the equipment used on the four highway projects, the Munch Company commenced suit. Due to the bankruptcy of State Sand and the subsequent liquidation of Wisconsin Surety, the Munch Company presented its claim in the Wisconsin Surety liquidation proceeding. Munch sought recovery of the sum of $129,-455.28, representing the rental value of equipment for the four projects, plus $14,455.28 in the amount of alleged damaged and lost equipment attributable to the Dane and Marathon counties projects.

The liquidator issued a determination that the claim of the Munch Company be disallowed in full. The Munch Company filed an objection to the liquidator's determination and, pursuant to sec. 645.62, Stats.,[2] a hearing was

---

[2] Sec. 645.62, Stats., provides:

"645.62 **Proof of claim.** (1) CONTENTS OF PROOF OF CLAIM. (a) Proof of claim shall consist of a verified statement that includes all of the following that are applicable:

"1. The particulars of the claim, including the consideration given for it.

"2. The identity and amount of the security on the claim.

"3. The payments made on the debt, if any.

"4. That the sum claimed is justly owing and that there is no setoff, counterclaim or defense to the claim.

held before the circuit court for Dane County. The trial judge determined that the Munch Company's claims with respect to two of the projects were barred for failure to comply with the statutory time limit under sec. 289.14(2), Stats. (1971).[3] That part of the trial court's determination was not challenged on appeal, and, accordingly, the amount presently at issue concerns claims on the Marathon and Dane counties projects, which total $79,455.28.

The trial court also held that since there was no separate project billing by Munch Company and that the

"5. Any right of priority of payment or other specific right asserted by the claimant.

"6. A copy of any written instrument which is the foundation of the claim.

"7. In the case of any 3rd party claim based on a liability policy issued by the insurer, a conditional release of the insured pursuant to s. 645.64(1).

"8. The name and address of the claimant and the attorney, if any, who represents the claimant.

"(b) No claim need be considered or allowed if it does not contain all the information under par. (a) which may be applicable. The liquidator may require that a prescribed form be used and may require that other information and documents be included.

"(2) SUPPLEMENTARY INFORMATION. At any time the liquidator may request the claimant to present information or evidence supplementary to that required under sub. (1), and may take testimony under oath, require production of affidavits or depositions or otherwise obtain additional information or evidence.

"(3) CONCLUSIVENESS OF JUDGMENTS. No judgment or order against an insured or the insurer entered after the filing of a successful petition for liquidation and no judgment or order against an insured or the insurer entered at any time by default or by collusion need be considered as evidence of liability or of the amount of damages. No judgment or order against an insured or the insurer entered within 4 months before the filing of the petition need be considered as evidence of liability or of the amount of damages."

[3] Sec. 289.14(2), Stats., was renumbered sec. 779.14(2) by Laws of 1979, ch. 32.

equipment was furnished on an "as needed" basis pursuant to a pre-existing agreement, Wisconsin Surety could not be held liable under such circumstances.

The court of appeals affirmed, holding that the Munch Company did not intend to provide its equipment on specific projects. The court stated:

"Because Munch supplied the equipment to State Sand pursuant to an agreement other than the specific, public works contracts, it is outside the scope of persons protected by State Sand's bond issued by Wisconsin Surety for the state highway projects, and the circuit court properly denied Munch's claims against Wisconsin Surety."

The intent of the legislature when it enacted the public improvement bond statute was to make contractors, subcontractors and suppliers on public jobs equally protected with those on private jobs. *Southern Surety Co. v. Metropolitan S. Comm.*, 187 Wis. 206, 211, 201 N.W. 980, 204 N.W. 476 (1925). The purpose of the lien statutes is to provide protection for the persons who improve the property of others by their work. *City Lumber & Supply Co. v. Fisher*, 256 Wis. 402, 406, 41 N.W.2d 285 (1950). Since liens may not be filed against public projects, the bond statute was enacted to protect public project contractors, subcontractors and suppliers.

Sec. 779.14(1), Stats., requires the prime contractor to agree to pay his subs and suppliers who furnish labor or materials used in performing the contract. Since there are no construction lien rights against the property owned by a public body to provide payment security to subs and suppliers, as is true in private construction contracts (sec. 779.01(3)), the statute requires the prime contractor to post a bond, except in specified circumstances where other appropriate guarantees are provided

in the contract. The bond shall be in an amount not less than the contract price and:

"[S]hall be conditioned for the faithful performance of the contract and the payment to every person entitled thereto of all the claims for labor performed and materials furnished *under the contract,* to be used or consumed in making the public improvement or performing the public work as provided in the contract and this subsection." (Emphasis added.)

The underlying issue in this appeal is the meaning of the phrase "under the contract." We hold that this phrase has nothing to do with whether the supplier makes its agreement with the prime contractor before or after the prime contractor receives the contract award from the state, nor whether the agreement between prime contractor and supplier references the specific public improvement contract for which the materials will be provided. "Under the contract" means that the labor or materials was used or consumed on the public improvement project and within the scope of the particular prime contract which the surety company bonded.

In this case, the Munch Company's equipment was rented by State Sand and used by State Sand in performing the specific contracts which Wisconsin Surety bonded. That is all the statute requires. *Ozaukee Sand & Gravel Co. v. Milwaukee,* 243 Wis. 38, 43, 9 N.W.2d 99 (1943) relied on by the court of appeals is not controlling. In that case the nature of the contract and the type of job being considered did not constitute a contract for public improvement within the meaning of the statute, and, therefore, the then existing trust fund statute did not apply.

*Harnischfeger Sales Corp. v. Kehrein Bros.,* 229 Wis. 225, 281 N.W. 918 (1938) was the other case relied on by the court of appeals but it also is not applicable to

this case. In *Harnischfeger* the claimant had sold the equipment forming the basis for the bond claim to the prime contractor four years prior to the performance of the work. We there held that there was no bondable claim in the seller, since it could not be claimed the seller furnished the machines for the specific public improvements project. That is not the situation in the instant case where Munch Company's equipment, though rented, was used by State Sand in Wisconsin Surety's bonded project. The seller of equipment does not need the protection of the bond statute, since it can secure payment by retaining a lien on the equipment sold or foreclose of its conveyance contract.

The liquidator makes two additional arguments in support of its position that the Munch Company is not entitled to the protection of sec. 779.14(1), Stats. First, he contends that the statute was not meant to protect suppliers who are involved in a "common business venture" with the prime contractor. It was determined below and is supported by the record that the Munch Company and State Sand were not involved in a joint venture. The effect of this finding cannot be avoided by using the label "common business venture" rather than "joint venture."

The liquidator also contends that under general suretyship law, a surety is not liable for the furnishing of capital plant and machinery to a bonded principal. Sec. 779.14(1), Stats., specifically states that "machinery, vehicles, tractors, equipment, . . . tools" are within the definition of "materials furnished, used or consumed in making the public improvement." We decline to adopt the "capital plant defense" in the light of such express statutory language.

The liquidator finally contests the damage figure requested by the Munch Company. The trial court, apparently because it concluded that Wisconsin Surety was

not liable to the Munch Company, made no findings as to the value of the equipment furnished by the Munch Company and used or consumed on the Dane and Marathon counties projects. Accordingly, no factual determination has ever been made as to what amount the Munch Company is entitled if it has a right to recover.

An appellate court can resolve factual matters left unresolved by the trial court where such matters are undisputed. *Mayer v. Mayer,* 91 Wis. 2d 342, 353, 283 N.W. 2d 591 (Ct. App. 1979) ; *Afram v. Balfour, Maclaine, Inc.,* 63 Wis. 2d 702, 708, 218 N.W.2d 288 (1974).

The Munch Company has requested $27,500 for the Dane county project and $37,500 for the Marathon county project. These figures are based on an oral agreement between Munch and Retzlaff to reduce in half their earlier orally agreed upon figures for the projects, since the projects were only 50 percent completed with the use of Munch Company equipment. The agreement was subsequently confirmed by contemporaneous writings by Munch which are also in the record. The liquidator submitted no proof to dispute the existence of the oral agreement. We therefore accept the agreement as established and find the Munch Company is entitled to an award of $65,000 for use of its rented equipment on these two projects.

Regarding the claim for $14,455.28 representing charges for lost and damaged equipment, the record is not clear concerning the propriety of these claims. We therefore remand this case to the trial court for a determination of the loss sustained by the Munch Company, if any, for lost and damaged equipment.

*By the Court.*—The decision of the court of appeals is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

ABRAHAMSON, J., took no part.