GOLDEN VALLEY SUPPLY COMPANY, Plaintiff-Respondent,†

v.

The AMERICAN INSURANCE CO., a/k/a Fireman's Fund Ins. Cos. and Frank Tomlinson Co., Inc., Defendants-Third Party Plaintiffs-Appellants,

v.

Patrick BUCKMASTER, d/b/a Liberty Construction, Defendant-Third Party Defendant.

Court of Appeals

*No. 95–0357. Submitted on briefs June 26, 1995.—Decided July 18, 1995.*

(Also reported in 537 N.W.2d 58.)

†Petition to review denied.

867

On behalf of the defendants-third party plaintiffs-appellants, the cause was submitted on the briefs of *Matthew F. Anich* of *Dallenbach & Anich, S.C.* of Ashland.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David J. Zubke* of *Best & Flanagan* of Minneapolis, Minnesota.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Frank Tomlinson Company, Inc., and its insurer, American Insurance Company, appeal a summary judgment in favor of Golden Valley Supply Company. The trial court granted Golden Valley summary judgment, concluding that § 779.14, STATS., required Tomlinson to provide a bond to protect material suppliers. American and Tomlinson contend that because Tomlinson's contract is for labor only, they are not liable to Golden Valley as a material supplier. Because we conclude that § 779.14 requires each prime contractor to provide a bond only for labor and materials furnished within the scope of its contract with the owner, we reverse the summary judgment and remand to dismiss Golden Valley's action against Tomlinson and American.

The following facts are undisputed. Tomlinson contracted to be a prime contractor for general construction work on a new school for the School District of Shell Lake. This contract limited Tomlinson's obligations to provide labor only; the school district elected to purchase the materials.[1] Further, under the general contract, Tomlinson was to perform its obligations according to the plans and specifications of the school district's architect. As required by the terms of the general contract and § 779.14, STATS.,[2] prime contractors to public improvements must give a bond issued by a surety for performance and payment. Thus, a bond

---

[1] The School District of Shell Lake's Project Manual indicates that as a tax exempt body, the school district would purchase the materials directly from the manufacturer and supplier to save the 5.5% sales tax.

[2] The contract was dated May 27, 1992, thus we interpret § 779.14, STATS., 1991-92, which is identical to the 1993-94 statute.

was issued naming Tomlinson as the principal and American as the surety.

Pursuant to its obligations as the prime contractor for labor, Tomlinson subcontracted with Patrick Buckmaster, d/b/a Liberty Construction, to install acoustical ceiling tile and grid and wall panels. These materials were to be purchased by the school district. Subsequently, at the school district's request, Liberty contacted Golden Valley to supply the materials for the ceiling and walls.

Although the school district paid Liberty for the materials, Liberty failed to pay Golden Valley for the majority of the materials delivered to the job site. Thus, Golden Valley filed suit on the bond issued by American for the full amount owed, contending that Golden Valley was the school district's supplier and that Tomlinson was liable to Golden Valley for all claims of labor and materials as a prime contractor of the project, pursuant to § 779.14, STATS. Subsequently, Golden Valley moved for summary judgment, which the trial court granted, finding that Golden Valley was a supplier to the school district and that Tomlinson and American were liable under the requirements of the bond statute in the amount of $43,091.61, together with costs and attorney fees. American and Tomlinson appeal.

When reviewing summary judgment, we independently apply the same methodology as the trial court. *Kloes v. Eau Claire Cavalier Baseball Ass'n*, 170 Wis. 2d 77, 83, 487 N.W.2d 77, 79-80 (Ct. App. 1992). That methodology has been set forth numerous times, and we need not repeat it here. *Id.* Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment

as a matter of law. *See Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

The issue presented involves the construction and application of § 779.14, STATS., to undisputed facts, which is a question of law that we review without deference to the trial court. *State v. Pham,* 137 Wis. 2d 31, 33-34, 403 N.W.2d 35, 36 (1987). The purpose of statutory construction is to give effect to the legislative intent. *Zimmerman v. DHSS,* 169 Wis. 2d 498, 504, 485 N.W.2d 290, 292 (Ct. App. 1992). When determining legislative intent, we first examine the language of the statute itself and will resort to extrinsic aids only if the language is ambiguous. *Id.* If the statute's language is ambiguous, we look to the statute's scope, history, context, subject matter and object to determine the legislature's intent. *Id.* at 504-05, 485 N.W.2d at 292. We will avoid statutory constructions which lead to an absurd or unreasonable result. *State v. Mendoza,* 96 Wis. 2d 106, 115, 291 N.W.2d 478, 483 (1980).

American and Tomlinson contend that because Tomlinson's contract with the school district was a contract for labor only, the bond does not include coverage for materials. Therefore, both American and Tomlinson assert that they are not liable to Golden Valley as a supplier of materials. We agree.

To better explain the issue presented, we examine the general law regarding construction liens. Under Wisconsin law, a construction lien may not be filed against the property owned by a public entity. *Nagle Hart, Inc. v. United Pac. Ins. Co.,* 141 Wis. 2d 858, 861, 417 N.W.2d 36, 37 (Ct. App. 1987). Consequently, the Wisconsin legislature has adopted certain provisions to

protect persons who furnish labor and materials for public improvements. *Id.*

The pertinent language of § 779.14, STATS., requires that a prime contractor must give a bond issued by a surety for public works contracts. Section 779.14(1m)(b)1, STATS. We must look to the statute as it read at the time of the contract to determine if it is ambiguous on its face. The statute states:

> 2. The bond shall carry a penalty of not less than the contract price, and shall be conditioned for all of the following:
>
> a. The faithful performance of the contract.
>
> b. The payment to every person, including every subcontractor or supplier, of all claims that are entitled to payment for labor performed and materials furnished for the purpose of making the public improvement or performing the public work *as provided in the contract and this subsection.* (Emphasis added.)

We conclude that the statute, as it reads, is ambiguous as to whether the prime contractor's bond obligations remain restricted to the labor and materials furnished within the scope of its underlying contract. Thus, we are required to examine the legislative history, the context and subject matter of the statute to determine whether the redrafted language of § 779.14(1m), STATS., requires that the statute be read within the scope of the underlying prime contract as § 779.14(1)(b)2, STATS., 1985-86, did. *See Zimmerman,* 169 Wis. 2d at 504-05, 485 N.W.2d at 292.

Prior to the 1987-88 statutes, this section of the public works bond statute included the specific language "under the contract." The statute read:

> The bond shall carry a penalty of not less than the contract price, and shall be conditioned for the faithful performance of the contract and the payment to every person entitled thereto of all the claims for labor performed and *materials furnished under the contract,* to be used or consumed in making the public improvement or performing the public work as provided in the contract and this subsection.

Section 779.14(1)(b)2, STATS., 1985-86 (emphasis added). Our supreme court interpreted this language as indicating that the labor or materials used on the public improvements project that are within the scope of the prime contract are the subject of the bond by the surety company. *In re Wisconsin Surety,* 111 Wis. 2d 194, 199-200, 330 N.W.2d 768, 771 (1983). In the redrafted statute, § 779.14(1m)(b)2, STATS., 1991-92, the language of "under the contract" has been deleted.

The statutory modifications of the bond requirements on public work projects is thoroughly documented by its drafters. Their aim was to make the public construction bonding requirements consistent with those of the construction bonds in the private sector, which protect those furnishing labor and materials under the prime contractor's contract with the owner. *See* SUZANNE L. HAGOPIAN, DRAFTER'S NOTE FROM THE LEGISLATIVE REFERENCE BUREAU (Mar. 9, 1988). Drafting notes also indicate that there was no need to delete any existing statutory language, but only to insert additional language to make the public sector bonding statute consistent with the private sector bonding statute. *See* JAMES M. WARD, DRAFTER'S LETTER (Jan. 19, 1988). Further, the analogous private sector statute for bonding requirements, § 779.035, STATS., has the lan-

guage "under the contract,"[3] which supports the premise that the statute is to be read within the scope of the underlying contract between the prime contractor and owner, in either public or private sector projects.

Additionally, nowhere in the legislative history is it indicated that the modifications to the statute were intended to expand the prime contractor's duty to provide a bond for other labor and materials not furnished within the scope of its contract with the owner. Thus, we conclude that the modifications made to § 779.14, STATS., do not change our supreme court's interpretation requiring the bond to cover those furnishing labor and materials only within the context of the underlying contract between the prime contractor and owner. *See Wisconsin Surety,* 111 Wis. 2d at 199-200, 330 N.W.2d at 771.

---

[3] Section 779.035(1), STATS., reads in pertinent part:

(1) To eliminate lien rights as provided in s. 779.03(2), the contract between the owner and the prime contractor for the construction of the improvement shall contain a provision for the payment by the prime contractor of all claims for labor performed and materials or plans or specifications furnished, used or consumed, except plans or specifications furnished by the architect, professional engineer or surveyor employed by the owner, in making such improvement and performing the work of improvement. The contract shall not be effective to eliminate lien rights unless the prime contractor gives a bond issued by a surety company licensed to do business in this state. The bond shall carry a penalty for unpaid claims of not less than the contract price, and shall be conditioned for the payment to every person entitled thereto of all the claims for labor performed, and materials furnished *under the contract* and subsequent amendments thereto, to be used or consumed in making the improvement or performing the work of improvement as provided in the contract and subsequent amendments thereto. . . . (Emphasis added.)

This conclusion is logical within the context of construction law. In large projects, several contractors may be categorized as prime contractors for different phases of construction based on their direct contracts with the owner. *See Wes Podany Constr. Co. v. Nowicki,* 120 Wis. 2d 319, 325, 354 N.W.2d 755, 758 (Ct. App. 1984). In *Nowicki,* we concluded that the term "prime contractor" encompassed those persons who deal directly with the owner. We further defined prime contractors as those who contract to improve another's land, or an owner who does general contracting for improvements of his or her own land, concluding that both may be prime contractors. *Id.*; *see also* STEVEN W. MARTIN, WISCONSIN CONSTRUCTION LIEN LAW HANDBOOK, § 1.3 (2d ed. 1991).

■■■

Here, the contract provided that the school district was to supply the materials and Tomlinson was to supply labor; therefore, each was acting as a prime contractor within the scope of its duties under the contract. Section 779.14, STATS., does not require that all prime contractors involved in a project provide protection against claims for all labor and materials supplied by other prime contractors. To read the statute so broadly would not only make the statute inconsistent with construction bonds in the private sector and contrary to the legislative intent, but would lead to an unreasonable and absurd result. Under Golden Valley's contention, each prime contractor would not only be required to insure for all materials and labors furnished under the terms of its contract with the owner, but to also insure for materials and labor furnished under the terms of other prime contractors' contracts. We reject such a broad interpretation.

We hold that each prime contractor is responsible for all the labor and materials furnished, used or consumed in making the public improvement within the scope of that individual prime contractor's duties under its specific contract with the owner, not for every contract pertaining to the public project. Thus, § 779.14, STATS., requires each prime contractor to provide a bond in the amount of its own contract, not in the amount of the total of all prime contractors together.

Construction of a contract is generally a matter of law; whether the contract is ambiguous is a question of law. *Harris v. Metropolitan Mall,* 112 Wis. 2d 487, 503-04, 334 N.W.2d 519, 527 (1983); *Moran v. Shern,* 60 Wis. 2d 39, 46-47, 208 N.W.2d 348, 351 (1973). A contract provision that is reasonably susceptible to more than one construction is ambiguous. *Garriguenc v. Love,* 67 Wis. 2d 130, 135, 226 N.W.2d 414, 417 (1975).

The contract between Tomlinson and the school district was for the labor involved in public school improvements and construction. As the contract summary indicates, the owner, in this case the school district, was to purchase the materials. Hence, the contract with Tomlinson was unambiguous and clearly for the labor only. If we were to read the redrafted section of § 779.14, STATS., not in the scope of the contract, as Golden Valley asserts, we would be shifting the responsibility for the payment of materials to one prime contractor, Tomlinson, who did not contract to provide materials for the school district in the first instance. This result would be illogical.

■

Tomlinson contracted with Liberty to install acoustical ceiling tile and grid and wall panels. Tomlinson's bond issued by American covers what is in its contract, that is, the labor performed for this public project. Thus, Tomlinson properly conformed to § 779.14, STATS. The statute makes the prime contractor responsible for the payment of all those obligations which the prime contractor or the subcontractor incurs within the scope of the prime contractor's contract. Because Tomlinson had no duty to provide a bond to cover materials that were not included in its contract, Tomlinson, and its surety American, are not liable to Golden Valley for the materials purchased by Liberty on behalf of the school district. Because of our conclusion, we need not address the other issue on appeal.

*By the Court.*—Judgment reversed and cause remanded with directions.