James N. ELLIOTT and Milwaukee Building and Construction Trades Council, Plaintiffs-Appellants,†

v.

Michael L. MORGAN, the City of Milwaukee, Milwaukee Riverwalk District, Inc. and Business Improvement District No. 15, Defendants-Respondents.

Court of Appeals

*No. 96–1904. Oral argument July 31, 1997.—Decided October 21, 1997.*

(Also reported in 571 N.W.2d 866.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Matthew R. Robbins* and *Frederick C. Miner* of *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.* of Milwaukee. There was oral argument by *Matthew R. Robbins*.

On behalf of the defendants-respondents Michael L. Morgan and the City of Milwaukee, the cause was submitted on the brief of *Grant F. Langley*, city attorney and *Linda Uliss Burke*, assistant city attorney. There was oral argument by *Linda Uliss Burke*.

On behalf of the defendants-respondents Milwaukee Riverwalk District, Inc. and Business Improvement District No. 15, the cause was submitted on the brief of *Kathleen S. Donius* and *Daniel J. LaFave* of *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.* of Milwaukee. There was oral argument by *Kathleen S. Donius*.

Before Wedemeyer, P.J., Schudson, J., and Daniel L. LaRocque, Reserve Judge.

WEDEMEYER, P.J.  James N. Elliott and the Milwaukee Building and Construction Trades Council appeal from a judgment entered after the trial court granted Michael L. Morgan, the City of Milwaukee, the Milwaukee Riverwalk District, Inc., (MRD) and the Business Improvement District No. 15's (BID) motion for summary judgment. Elliott claims the trial court erred when it concluded that portions of the construction of the Riverwalk project were not a "public work" subject to the requirements of § 66.293, Stats.

(1993–94).[1] Because the Riverwalk project does not constitute a public work, we affirm.

## I. BACKGROUND

This case involves the Riverwalk development project in downtown Milwaukee, which consists of a system of sidewalks, decorative lighting, and landscaping along the Milwaukee River, extending from Clybourn Street at its southern boundary to Pleasant Street at the north. The City entered into agreements to provide grant money to the two entities who are developing the Riverwalk project: the Business Improvement District No. 15 and the Milwaukee Riverwalk District, Inc.

### A. *Business Improvement District.*

The pertinent undisputed facts are as follows. A "BID" is governed by a board of directors, appointed by the municipality's "chief executive officer," here the mayor, and confirmed by the municipality's legislative body, here the Common Council. Section 66.608(3)(a), STATS. "The board shall have at least 5 members. A majority of board members shall own or occupy real property in the business improvement district." *Id.* A BID board is authorized to "have all powers necessary or convenient to implement the operating plan, including the power to contract," if those powers are "specified in the operating plan as adopted, or amended and approved" pursuant to § 66.608, STATS. Section 66.608(3)(d), STATS. The agreement for the Riverwalk project gives the board of BID the authority to obtain property in connection with the project and to con-

---

[1] All further references are to the 1993–94 statutes unless otherwise indicated.

struct, as well as "[c]ontrol or own, operate and maintain or cause to be operated and maintained," the project segments that are not designated for control by the City. Private property owners petitioned for the creation of the BID. The creation of the BID was approved by the Milwaukee Common Council in March 1994. The BID is funded by $8,537,000 in grant funds from the City of Milwaukee, and by $1,945,000 from special assessments on private property within the district.

*B.   Milwaukee Riverwalk District.*

The MRD is a non-profit Wisconsin corporation. It is funded by $759,000 in a grant from the City of Milwaukee and by $100,000 from Midwest Express. The MRD agreed to "further[ ] Riverwalk construction and development along certain segments of the Milwaukee River."

None of the improvements which are the subject matter of this lawsuit will be owned, leased or operated by the City of Milwaukee. The project segments that are to be owned by the City are governed by the wage-rate laws of § 66.293, STATS., and are not at issue here.

Elliott filed a complaint against Morgan and the City, seeking injunctive relief on the basis that the entire Riverwalk Project is subject to the wage-rate laws of § 66.293, STATS., because the project is a "public work." The Honorable George A. Burns, Jr., denied the request for injunctive relief, and dismissed the complaint on the basis that the portions of the project that are privately owned are not public works and therefore are not subject to the wage-rate laws. We affirmed the dismissal on the grounds that Elliott failed to join indispensable parties, namely the BID and MRD. *Elliott v. Morgan,* No. 95–0759, unpublished op. at 2 (Wis.

257

Ct. App. Nov. 7, 1995). Elliott filed a new complaint adding BID and MRD as defendants. Both sides filed motions for summary judgment. The trial court granted the defendants' motion, ruling that the project does not constitute a public work because that term applies only to "public improvements performed upon premises owned by the City."[2] Elliott now appeals.

## II. DISCUSSION

Elliott argues that the Riverwalk project is a public work because: (1) it is work done by contract for the City; (2) it is of a public nature and character; and (3) the City provided funding for the project and is exhibiting pervasive control over the project. The City, BID and MRD counter that although the project assumes a public purpose, it is not a public work because: (1) the project involves improvements to privately owned property; (2) the City will not be using or maintaining the Riverwalk; (3) neither public financing nor use by the public at large will transform a private construction project into a public work; and (4) the City is not undertaking the work covered by the project. The trial court agreed with the City.

This case involves the interpretation of statutes to undisputed facts, which is a question of law that we review independently. *See Golden Valley Supply Co. v. American Ins. Co.*, 195 Wis. 2d 866, 866, 537 N.W.2d 58, 59 (Ct. App. 1995). In addition, this case comes to us following a grant of summary judgment. In reviewing a grant of summary judgment, we employ the same methodology utilized by the trial court. *See Grotelues-*

---

[2] The trial court presiding over this action was the Honorable William J. Haese.

*chen v. American Family Mut. Ins. Co.*, 171 Wis. 2d 437, 446–47, 492 N.W.2d 131, 134 (1992). On this basis, again, our review is *de novo*. *See id.*

The statute at issue in this case is § 66.293(3), STATS. (1993–94), which provides in pertinent part:

> Every municipality, before making a contract by direct negotiation or soliciting bids on a contract, for any project of public works . . . shall apply to the department of industry, labor and human relations to ascertain the prevailing wage rate, hours of labor and hourly basic pay rates in all trades and occupations required in the work contemplated. . . . If any contract for a project of public works . . . is entered into, the wage rates and hours determined by the department . . . shall be incorporated into and made a part of the contract. No laborer, worker or mechanic employed directly upon the site of the project . . . may be paid less than the prevailing wage rate in the same or most similar trade or occupation
> . . . .

The issue presented, therefore, is whether the City has made or entered into a contract for public works. If so, it is subject to § 66.293(3), STATS., and MILWAUKEE ORDINANCE § 309–25,[3] and should be required to incor-

---

[3] MILWAUKEE ORDINANCE § 309–25, provides in pertinent part:

**Minimum Wage Provisions Applicable to City Contractors**. Hereafter all skilled and unskilled laborers employed in any work done by contract for the city of Milwaukee, by any contractor or subcontractor performing work for the city, either new construction work or repair work on any roads, bridges, sewers, streets, alleys, buildings or any other public work whatsoever, shall receive and be paid a sum of not less than the current rate of per diem wages established by the common council of said city on city work.

All parties agree that the state statute, § 66.293, STATS., and the city ordinance, § 309–25 employ the term "public work"

porate the prevailing wage rate into the contract.[4] For § 66.293(3) to apply, we must conclude that: (1) the City must have entered into the contract; and (2) the contract involved a public work. Elliott concedes that the City itself did not enter into a contract with companies actually performing the work. Instead, he argues that the grant agreements that the City entered into with BID and MRD act as "the contract." He suggests that the City cannot subvert the requirements of the statute by entering into an agreement with BID and MRD, that in turn actually contracted with the construction companies who performed the work. Elliot also argues that BID is actually an alter ego of the City because it is created by the City. The authorities he cites in support of this proposition, however, are non-persuasive foreign case law. Each case cited by Elliott on this point is distinguishable, either factually or legally because the Wisconsin statute differs from the statute at issue in the foreign cases.[5] Moreover, the agreements that Elli-

in a similar fashion. The only distinction between the two laws is that the ordinance is specifically tailored and expressly limited to the City's obligations.

[4] We note with interest that there is no evidence in the record that the workers hired to construct this project did not receive the prevailing wage rate. In the absence of this information, a decision on the merits in this case may seem somewhat unusual. Nonetheless, at oral argument, both sides requested that we decide the merits of the matter. In the interest of furthering the administration of justice, we comply with the request.

[5] Elliott cites *Building & Construction Trades Department, AFL-CIO v. Turnage*, 705 F. Supp. 5 (D.D.C. 1988). In this case, however, the government directly contracted with a building company for the construction and leasing of a clinic for the government. *See id.* He also directs this court to *Lycoming County Nursing Home Ass'n, Inc. v. Commonwealth of Penn-*

ott labels "the City contract" are simply agreements that detail the requirements for obtaining the grant money. The City did not solicit bids, negotiate or enter into any construction contracts for the work in question.

In examining our statute, the legislative policy underlying the statute, and the governing law, we conclude that the portions of the Riverwalk project at issue (the non-City owned segments) do not constitute public works. The interpretation that Elliott attempts to give the statute is consonant with his interest in promoting

*sylvania*, 627 A.2d 238 (Pa. Ct. App. 1993). This case is distinguishable because the statute at issue differs from Wisconsin's and because the property at issue was actually owned by the municipality. *See id.* at 240–42 (statute required only partial public funding to make a project a public work). Likewise, *Hardin Memorial Hospital, Inc. v. Land*, 645 S.W.2d 711 (Ky. App. 1983), involved a much broader statute than Wisconsin's and involved county-owned land. *See id.* at 713 (statute provides that any public funding makes the project public). We are not persuaded by *United States ex rel. Noland Co. v. Irwin*, 316 U.S. 23 (1942), because that case's application is limited to the National Industrial Recovery Act. *See United States ex rel. General Elec. Supply Co. v. U.S. Fidelity & Guar. Co.*, 11 F.3d 577 (6th Cir. 1993). *Central Arizona Water & Ditching Company v. City of Tempe*, 680 P.2d 829 (Ariz. App. 1984), differs from the instant case because the construction involved City improvements. *See id.* The City prepared the plans, invited the bids, selected the builder and prepared all contract documents. *See id.* at 313. Elliott also cites *State ex rel. Webster v. City of Camdenton*, 779 S.W.2d 312 (Mo. App. 1989). That case, however, involved work for the City because the project was to be used by the City on land formerly owned by the City and leased to it. *Id.* It also was governed by a broader statute. *See id.* at 316 (statute denominates a public work any project financed in part by public funds.).

individual workers' desire to be paid the prevailing wage. This interest, though laudable and wholesome, cannot be reached on the basis of the current statute. As noted in footnote 5, many other jurisdictions, similarly mindful of promoting the prevailing wage rate, have more fully defined this purpose by enacting a statute that more broadly defines a public work. We presume that our legislature, in its wisdom, is familiar with this growing body of foreign legislation, which broadly defines a public work to include any project that is funded in part by public money. For reasons unknown, however, our legislature has not taken the same expansive steps to broaden the definition of a public work to include any project which receives public funding. Because this task is a policy determination left to the legislature, we cannot read such an interpretation into the wording of our limited statute, which does not define the term.

In determining what is and what is not a public work, we are offered guidance by our Attorney General. Attorney General's opinions may be viewed by this court as persuasive guides as to the meaning and purpose of legislative enactments. *See Green v. Jones,* 23 Wis. 2d 551, 558, 128 N.W.2d 1, 4 (1964). In 64 OAG 100, the Attorney General addressed the question of the definition of a public work:

> Not all turnkey projects are public works projects. For example, turnkey projects financed by industrial revenue bonds under sec. 66.521, Stats., typically are private industrial projects. Although the use of public financing under sec. 66.521 serves a public purpose sufficient to support the constitutionality of the law, the projects financed thereby do

not, merely as a consequence of the method of financing, become public in character.

. . . .

Whether a particular project is public or private requires an analysis of the specific factors involved. Each case must be separately evaluated. Generally speaking, however, a public works project is one for the use of a public body. . . . The fact of public improvement through public monies or through ultimate public ownership does not itself make the project one of public works.

(Citations omitted.) As the Attorney General opines, the source of funding for a project does not control whether the project constitutes a public work. Accordingly, Elliott's contention that the large grants provided by the City to BID and MRD make this project a public work is incorrect. The fact that a project has a public purpose, which justifies the involvement of public financing, does not make the project a public work. *See Warren v. Reuter*, 44 Wis. 2d 201, 216, 170 N.W.2d 790, 796 (1969).[6] It is true that the Riverwalk will serve a public purpose and the public will have access to the walkway. Doubtless, it will improve business by providing additional access to the businesses along the walkway. It will undoubtedly make the City of Milwaukee more beautiful and hopefully will promote, attract,

---

[6] Elliott suggests that the control exerted by the City over the project makes the project a public work. We are not persuaded. The controls that Elliott refers to are certain conditions the City imposed in exchange for providing the grant money to BID and MRD. When the City decides to gift money for a project involving a public purpose, it is required to impose certain conditions to ensure that the public purpose of the funding of private projects is carried out. *See Warren v. Reuter*, 44 Wis. 2d 201, 216, 170 N.W.2d 790, 796 (1969).

263

stimulate and revitalize commerce and industry within the City. Nonetheless, a public purpose does not automatically denote a public work. Significant is the factor that the public will not "own" the Riverwalk.

Additional support for our conclusion that the Riverwalk is not a public work, may be found within City of Milwaukee Ordinances addressing "Public Works." Section 309–01 makes the Department of Public Works responsible for "all matters relating to the design, construction, maintenance and operation of the *physical properties of the City of Milwaukee.*" (Emphasis added.) Section 309–21 provides in pertinent part: "Any laborer or mechanic employed by any contractor or subcontractor of the City of Milwaukee upon any of the public works *of this city* is hereby limited to . . . ." (Emphasis added.) These references support the fact that a public work relates to work done for the City on City-owned property. The Riverwalk project is not being constructed by the City or for the City. Nor is it on property owned by the City.

■

*Blaser & Kammer v. Don Ganser & Associates, Inc.*, 19 Wis. 2d 403, 120 N.W.2d 629 (1963), provides further support for our conclusion. In that case, our supreme court held that the construction of apartment buildings by a private non-profit corporation was not a "public improvement or public work" even though the buildings were intended to house University of Wisconsin students and the state engineer approved the plans, specifications and principal construction contract. *See id.* at 409, 120 N.W.2d at 632–33. This decision undercuts Elliott's claim that use by the public and control by city officials converts a project into one for public work.

One of the major premises of Elliott's contention is that the *Green v. Jones* case compels a conclusion that this project is a public work. Although the *Green* court concluded that the workers in that case were entitled to the prevailing wage, the facts are distinguishable. *See Green*, 23 Wis. 2d at 562–64, 128 N.W.2d at 6–7. *Green* involved the construction of a public highway and the relationship of the truckers to the project rather than what we have here–the nature of the project itself. *See id.*

The improvements at issue here will not be owned by the City. They will not be operated or maintained by the City. The City will not be using these portions of the Riverwalk. Rather, others, including the private property owners who abut that portion of the Riverwalk will own, operate, maintain and use the improvements. The private property owners are responsible for its upkeep and the utilities associated with the lighting of the project. All the risks associated with ownership fall on the private entity. So, although the Riverwalk may look like a public work, and may even smell like a public work, it does not quite quack like one. The facts demonstrate that the City does not own those portions at issue here, nor will ownership ever accrue to the City. Moreover, the City will not use the Riverwalk, it will not maintain or lease it, and will not in any way be responsible for it.

In accordance with the language of the statute and ordinance, the Attorney General's opinion, and pertinent case law, we conclude that in determining whether a project constitutes a public work, each project must be evaluated separately. The pertinent factors to consider include the nature and the character of the project, the ownership, use and maintenance of

265

the project, and whether the work is being done for the appropriate municipality. After considering these factors as pertinent to the instant case, we agree with the trial court's conclusion that the Riverwalk project is not a public work and therefore is not governed by § 66.293, STATS., or ordinance § 309–25.

*By the Court.*—Judgment affirmed.

SCHUDSON, J. *(dissenting).* I agree with the majority's view that in determining whether a project is a "project of public works" under § 66.293(3), STATS., we must look at the particular characteristics of the project and evaluate the "pertinent factors" including those the majority discusses. Majority op. at 265. Here, when I do so, I conclude that the Riverwalk is a "project of public works."

As the majority acknowledges, the City of Milwaukee has provided the overwhelming portion of the funding for the Riverwalk—a total of $9,296,000, while special assessments on private property account for $1,945,000 and Midwest Express has contributed $100,000. In addition, the City, through the BID and the MRD it established, has maintained virtually complete control over the creation, potential termination, design, and implementation of the project. Thus, clearly, the BID and the MRD have served as the City's "alter-egos" and have provided the apparatus through which the City has been able to exert such control. Finally and simply, the Riverwalk, in form and function, is so apparently a "project of public works" that swimming through the statutes and case law to conclude otherwise seems a strenuous upstream effort to defy common sense.

The flaw in the majority's reasoning is reflected by its emphasis on the distinction between the City owned

and non-City owned segments of the Riverwalk. Granted, if such a distinction facilitates a realistic determination of whether a project is one "of public works," it should be embraced. Here, however, where the project is a sidewalk linking private and public properties and providing a walkway for all citizens using both private and public facilities, I believe the segmented analysis renders an unrealistic result. Indeed, without the cooperative linkage of the private and public segments, I suspect the City would not have been inclined to provide millions of dollars and, certainly, the Riverwalk would not have been possible.

Thus, I believe that the majority's segment-based analysis has undermined what should have been a commonsense evaluation of whether the Riverwalk is a "project of public works." Attempting to apply that commonsense evaluation, I conclude that the Riverwalk is a "project of public works" subject to the prevailing wage requirements of § 66.293(3), STATS. Accordingly, I respectfully dissent.